## Richmond

### HARRY JUNIOR WILLIAMS, ALIAS, ETC. v. COMMONWEALTH OF VIRGINIA.

April 22, 1968.

Record No. 6741.

Present, All the Justices.

*Charlie T. Turner; James David Jones* for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Harry Junior Williams appeals from a conviction order sentencing him to death for first degree murder.

Williams was arrested November 10, 1966 on a warrant charging him with the murder of James Melvin Sarver and, shortly thereafter, was brought before the judge of the county court for a preliminary hearing. At the hearing the attorney for the Commonwealth introduced the testimony of three witnesses, and then moved the judge to certify the case to the grand jury. Defense counsel objected that the motion was premature because they wished to call witnesses for the accused. Counsel contended that Code § 19.1-101 afforded them that right.[1]

In their argument to the judge, however, counsel said that they intended to call witnesses who would testify about an incriminating oral statement and a written confession allegedly made by Williams. One of the defense counsel said: "[W]e understand that the defendant made a statement. We feel that this is the best opportunity to bring it out. The circumstances growing out of that alleged statement." The other defense counsel said: "I . . . concur . . . We should have an opportunity to submit evidence also on the confession."

The county judge overruled defense counsel's objection and, without hearing further evidence, certified the case to the grand jury. The grand jury subsequently indicted Williams for murder.

Before the trial in the circuit court, defense counsel moved to quash the indictment because Williams had been denied a preliminary hearing "as required and provided by law". The circuit court overruled the motion, to which action counsel objected and excepted and now assign error.

Williams pleaded not guilty and was tried before a jury on February 20 and 21, 1967. We will outline the evidence produced at the trial.

Between 10:30 and 11:00 on the night of November 9, 1966, Williams went to James M. Sarver's home. When Williams got there, Mr. and Mrs. Sarver, their fourteen-year-old son, James, their thirteen-year-old daughter, Linda, and their two younger daughters, Dianne and Nancy Marie, had gone to bed. Hearing a noise, Mr. Sarver went to the front door and opened it. Sarver talked briefly

---

[1] "The judge or justice of the peace before whom any person is brought for an offense shall, as soon as may be, in the presence of such person, examine on oath the witnesses for and against him, and he may be assisted by counsel." Va. Code Ann. § 19.1-101 (1960 Repl. vol.).

with Williams, after which Williams shot and killed him. Williams then entered the house, went into two of the bedrooms, and shot and wounded Mrs. Sarver, James Jr. and Nancy Marie. He also grabbed Dianne around the neck "[t]rying to choke her".

Linda, who followed Williams when he carried Dianne out of their bedroom, saw her mother lying in the hall "like he [Williams] had been beating her". To protect her mother Linda struck Williams with a mop or broom handle, whereupon he grabbed Linda's hands and dragged her out of the house. While he was dragging Linda across the front yard, the lights from a passing automobile lit up the yard. Mrs. Sarver, who was following Williams and Linda, shouted that the police were coming, and Williams ran.

Counsel for Williams called a high school principal and two psychiatrists as witnesses for the defense. The principal testified that Williams did not complete the ninth grade, and that his general achievement in school and intelligence were below average. The psychiatrists, both of whom were employed by the State, said that Williams had an I.Q. of 83, which one described as "[d]ull normal" and the other as "normal". On cross-examination, both psychiatrists expressed the opinions that Williams was mentally competent and sane, knew right from wrong and the consequences of his acts, and was mentally competent to assist in his own defense.

Williams, testifying on his behalf, said that he did not remember going to Sarver's home or anything about the happenings there on the night of November 9, 1966. He did remember that he had seen Sarver at a store during the afternoon or early evening, at which time (Williams said) Sarver invited him to go hunting and suggested he come to Sarver's home at about 10:00 that night. Williams remembered his activities after he had seen Sarver at the store, including drinking an unspecified amount of whiskey, up to the time he left his companions and "went on home". Williams said he remembered nothing after that until the police came to his home and woke him at 3:30 a.m.

On cross-examination, the attorney for the Commonwealth asked Williams whether he remembered making an oral statement to a police officer. The court then heard, out of the presence of the jury, Williams's testimony and the testimony of two police officers respecting the oral statement and a written statement made by Williams, as well as the circumstances surrounding each statement. After the court had announced that it would admit the oral statement as evidence, the attorney for the Commonwealth withdrew his request for the admis-

sion of the written statement. The jury was then recalled, and defense counsel introduced into evidence both the oral statement and the written statement, which we will describe in the next two paragraphs.

A police officer testified that Williams told him that he had gone to Sarver's home on the night of November 9 to borrow jumper cables because his car had "cut off" and that, while he was talking to Sarver at the front door, Mrs. Sarver came up and "just kept cursing and rattling off". Williams told the officer that Mrs. Sarver "made him mad and . . . that is when he pulled the pistol out of his back pocket and started shooting". Williams said that he then went into the house and "all of them in the house were after him"; that "he just started shooting them as they came to him".

According to the handwritten statement, Williams shot Sarver because someone (whom Williams did not identify) threatened to kill Williams if he did not kill Sarver. Then, Williams wrote, "[h]is family began yelling and I got nervous and had been drinking, that must have been when I went in and shot them".

In his closing argument to the jury, the attorney for the Commonwealth said:

"He [Williams] went in that house and shot Mrs. Sarver, shot little Jim, shot the little girl in the back bedroom and tried to shoot Mrs. Sarver again and ran out of bullets, five shots, and he threw his gun away, grabbed little Dianne by the throat, shook her like a chicken, was going to choke her, dragged her up to the front hallway and dropped her, then he grabbed Linda and dragged her out of the house. Let's brush it all aside and get down to the facts. What did he go down there for? *He went down there to get him a woman.* He knew where they were. He knew Linda. He had seen her in the car with her mother and father. [Williams had ridden in Mr. Sarver's car to and from work in Danville on several occasions.] That is why he went there. *He went down there to get a woman and that is why he dragged her out of the house. Why else did he do it? Where was he taking her?* He didn't tell us [when he testified] yesterday." (Emphasis supplied.)

The court overruled defense counsel's objection to those remarks, and counsel assign error to the court's ruling.

The jury found Williams guilty of murder in the first degree and fixed death as the punishment. After hearing argument on a motion to set aside the verdict and considering a pre-sentence report, the

court entered its conviction order on February 23, 1967, overruling the motion and sentencing Williams to death.

Defense counsel do not challenge the sufficiency of the evidence to support the jury's finding that Williams committed murder in the first degree. They assign these errors (the first and third having been already mentioned): (1) The circuit court's overruling the motion to quash the indictment because of alleged error by the county judge at the preliminary hearing, (2) the circuit court's admitting testimony about Williams's actions in the Sarver home after he had shot and killed Mr. Sarver, and (3) the circuit court's overruling the objection to remarks made by the attorney for the Commonwealth in his closing argument. (Defense counsel also assigned error to the language of instruction 6 given by the court. Counsel did not press this point at oral argument, and we find no error in the instruction.)

[1] The county judge had only one issue to decide when he presided at Williams's preliminary hearing, whether there was sufficient cause for charging Williams with murder (see Va. Code Ann. § 19.1-106 (1960 Repl. vol.)) or, in other words, whether there was reasonable ground to believe that a murder had been committed and Williams was the person who had committed the murder. See *Peyton* v. *Ellyson,* 207 Va. 423, 429, 150 S.E.2d 104, 109 (1966). At Williams's preliminary hearing the Commonwealth produced three witnesses whose testimony showed that Williams had killed Sarver. The attorney for the Commonwealth then moved the county judge to certify the case,[2] so there was no reason for the judge to hear further evidence *against* the accused.

Because a preliminary hearing is essentially a screening process, the Code of Virginia prescribed as early as 1849, and still prescribes, that the examining judge or justice "shall examine on oath the witnesses *for and against* . . . [the accused]". (Emphasis supplied.) Code of 1849, ch. 204, § 11, now Va. Code Ann. § 19.1-101 (1960 Repl. vol.) (*supra* note 1). Defense counsel therefore had the right to present evidence *for* Williams, that is, to show there was no reasonable ground for belief that Williams had committed murder. But counsel did not represent to the county judge that they wished to offer testi-

---

[2] Apparently Williams was brought before the county judge for a preliminary hearing on the charges of murdering Sarver and maliciously wounding Mrs. Sarver, James, Jr. and Nancy Marie. It appears from the transcript of the preliminary hearing that defense counsel may have waived a hearing on the malicious wounding charges, but the attorney for the Commonwealth moved the judge to certify the "charges" and the judge certified the "charges".

mony for that purpose. Instead, they represented that they wished to call witnesses who would testify respecting an incriminating statement and a confession made by Williams.

Moreover, in arguing the motion to set aside the verdict in the circuit court, defense counsel said: "At the trial, it was brought out that the Commonwealth not only had a written confession but an oral confession and we were completely unaware of it and had relied on the proceedings of the lower court [the preliminary hearing before the county judge] where he should have been given an opportunity to know the charges and nature and everything." (Upon questioning by the judge, however, counsel admitted that they had obtained information about the oral statement and a copy of the written statement before Williams's trial in the circuit court.)

So counsel complained of the county judge's actions at the preliminary hearing not because they were denied the right to present evidence for Williams, but because they were denied the right to discover evidence that might be used by the Commonwealth at a subsequent trial in the circuit court. Neither Code § 19.1-101 nor any Rule of Court gave counsel for the accused the right to call witnesses at the preliminary hearing for the purpose of discovery. We therefore hold that the county judge was not required to permit counsel to call witnesses for the purpose of discovery, and that the circuit court committed no error in overruling the motion to quash the indictment.[3]

[2] This brings us to the second assignment of error, the circuit court's admitting testimony about Williams's actions in the Sarver home after he had shot and killed Mr. Sarver.

At the beginning of the trial of this case, defense counsel moved the court in effect to instruct counsel to confine their opening statements and the evidence produced at the trial to the murder charge, for which Williams was being tried, and to forego mention of "what happened after that act". The court properly refused to so instruct counsel, saying in effect that it would rule on objections made at the proper time during the trial.

During the trial the court advised the jury:

"During the course of the trial in this case, there has been

---

[3] We recognize that counsel for the accused often obtains information about the Commonwealth's case at a preliminary hearing by listening to the testimony of the Commonwealth's witnesses and by cross-examining those witnesses. We do not intend by our holding in this case to condemn that practice.

evidence of other alleged offenses, shooting or malicious wounding of certain persons at the time of the alleged commission of this offense. You can only consider that testimony in connection with the explanation or intent or purpose of the commission of this particular crime. You are not trying him for the guilt or innocence of those offenses. You are only trying him on the charge for murder."

We hold that the court committed no error in admitting the evidence of which defense counsel now complain; such evidence was properly admissible for several reasons. Williams's actions at the Sarver home on the night of November 9 were continuous and interwoven. If evidence of any of those actions had been excluded, the circumstances surrounding the killing of Sarver would not have been fully disclosed to the jury. Evidence of Williams's actions after shooting Sarver tended to show that the killing was willful and deliberate and to show his motive for the killing. See *Timmons* v. *Commonwealth*, 204 Va. 205, 215, 129 S.E.2d 697, 704 (1963); *Rees* v. *Commonwealth*, 203 Va. 850, 868, 127 S.E.2d 406, 418 (1962).

[3] We will now dispose of defense counsel's objection to remarks made by the attorney for the Commonwealth in his closing argument (*supra*, p. 727), particularly his statement that Williams went to Sarver's home on the night of November 9 "to get him a woman". Defense counsel do not contend that Williams's motive or lack of motive for going to Sarver's home on the night of November 9 was irrelevant. In fact, at their request the court had instructed the jury that it could properly consider Williams's motive or lack of motive as bearing on his guilt or innocence.

Defense counsel contend, however, that the remarks of the Commonwealth's attorney were improper because they were based on speculation rather than on the evidence before the jury. In our opinion, however, those remarks did not go beyond the bounds of legitimate argument. One might properly infer from Williams's actions on the night of November 10, 1966, particularly his dragging Linda out of the house and onto the front yard, that his desire to force Linda to engage in sexual intercourse motivated him to go to Sarver's home on that night.

*Affirmed.*