## Richmond

## JAMES HENRY DAVIS, JR. v. COMMONWEALTH OF VIRGINIA.

April 28, 1975.

Record No. 740492.

Present, All the Justices.

*Robert L. Harris (Robert N. Johnson; Harris, Tuck, Freasier & Johnson, Professional Associates, Inc.,* on briefs), for plaintiff in error.

*Alan Katz, Assistant Attorney General (Andrew P. Miller, Attorney General; Michael M. Weise, Assistant Attorney General,* on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

James Henry Davis, Jr. was indicted for the crimes of robbery and murder. Upon his pleas of not guilty to both charges, he was

convicted on each by a jury and sentenced to confinement in the penitentiary for two consecutive terms, five years for robbery and twenty years for murder in the first degree. We granted the defendant a writ of error.

The assignments of error present three basic questions. Was the defendant's confession rendered involuntary because it was given upon the recommendation of his two retained attorneys, whom he contends were ineffective and incompetent? Was the defendant entitled to a second preliminary hearing on the charges as the result of the claimed inefficiency of counsel? Was the cross-examination of the Commonwealth's witness Bey improperly limited by the trial court?

We affirm.

On August 20, 1973, Louis Weinstein was shot and killed during the course of a robbery of his jewelry store at 420 East Broad Street in Richmond, Virginia. On September 13, 1973, the defendant was arrested and charged with the murder and robbery. He made no statement at the time of arrest. Daniel F. Terry and A. Clair Sager, Richmond attorneys, were retained the next day as his counsel. They had previously represented him on another charge resulting from an unrelated criminal offense which occurred on August 22, 1973.

On October 3, 1973, the preliminary hearing on the instant charges was held, having been continued from a prior date. The charges were certified to the grand jury which returned the indictments on November 5, 1973. The confession in question was given on November 20, 1973.

The trial had been scheduled for November 26, 1973, but it was continued on motion of the defendant, made by Terry on that day. Terry represented to the trial court that "Mr. Davis has changed his plea two or three times and in view of the fact that he would have plead guilty, now he wants a jury . . . ." He further stated that Davis had "come up with three witnesses at the last minute . . . ." Terry, accordingly, asked for more time to prepare the defense. The trial was postponed and set for December 4, 1973.

The record shows that on November 26, 1973, upon motion of Terry, an examination of the defendant was ordered to determine his mental condition. Code § 19.1-228. Responding to the court's inquiry into the reason for the motion, Terry stated,

"Well, his mother don't think he acts right, that's one thing, but he indicates that he will go along with — we've had the polygraph in this instance and then — then he's changed and makes a statement in this instance, he pleads one way in this instance and another way in another and its hard for me to reach him, I — I can't hardly cope with it, he just don't seem to act reasonable."

On December 3, 1973, the trial judge entered an order allowing Sager to withdraw as counsel for the defendant. Apparently, Terry was never technically a "counsel of record." Rule 1:5. The record shows that this order was entered following receipt by the trial judge of a letter dated November 27, 1973, in which Sager and Terry asked to be relieved as counsel. In the letter, counsel stated that they had agreed to represent the defendant provided they were paid their fee before the case was heard and provided the defendant would follow their recommendations in the handling of the case. They further stated that they had "done considerable work on this case since the defendant's mother approached [them] about representing him," that they had not been paid, and that the defendant had not followed their recommendations but had "insisted that the case be handled according to his directives."

Robert L. Harris, another Richmond attorney, was then appointed by the court. He represented the defendant to final judgment in the trial court and was appointed to prosecute this appeal.

On December 10, 1973, Harris, on behalf of the defendant, filed a motion for an order granting the defendant another preliminary hearing on the charges and a motion for an order "suppressing all statements by the defendant to the police since his arrest on the charges of murder and robbery for the reason that any statements made by the defendant were made upon the advice of incompetent or ineffective legal counsel in violation of" his constitutional rights. The hearing on these motions was held on January 18, 1974. The motions were denied and the trial on the merits commenced on January 24, 1974.

During the trial, the confession in question was received in evidence, over the objection of the defendant. Detective Norman A. Harding of the Richmond Bureau of Police, the investigating officer, testified that the defendant made no statement about the offenses to him on the date he arrested Davis but that on

November 20, he talked to the defendant at the Richmond City Jail in the presence of Terry. Harding stated that as the result of a "call" from Terry, he went to the jail where he waited for about one hour before Terry informed him that defendant "wanted to talk to me." After being advised by Harding of his rights, as required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966), the defendant fully and in detail confessed to the crimes with which he was charged. The evidence shows that the interrogation by Detective Harding was fair, objective, deliberate and free from pressure of any kind. The interview was completed in 13 minutes.

During the January 18, 1974, hearing on the preliminary motions, Ralph B. Robertson, Reid A. Simmons and the defendant testified; Terry and Sager did not. The evidence relevant to the confession consisted of the testimony of Robertson and of the defendant. Robertson, 30 years of age, testified that he was an attorney practicing in Richmond and an assistant Commonwealth's Attorney for the City. He stated that he was present in the Richmond General District Court on the date of the defendant's first appearance, that the defendant was "brought in" with Milton Cox, "the co-defendant to James Henry Davis," and that "Mr. Sager identified the wrong defendant as being his client and in all honesty this disturbed me a great deal because I knew the seriousness of the offense with which this defendant" was charged. Robertson further testified that he had discussed the case in passing conversation with Sager and Terry. He stated that the attorneys did not appear to be concerned about Davis' confession and thought that it would only help him. Robertson could not understand why Terry let Davis make a statement unless he had some "promise of cooperation." He acknowledged that there might have been a reason for this action but said that Terry did not state any reason for it.

The defendant testified that he was 20 years of age with an eighth grade education, that he had met Terry and Sager in connection with the August, 1973 offense, that he did not request the interview with Detective Harding, that his attorney came to the jail before the interview and "was talking to me and he was telling me to plead guilty to the charge and I told him I ain't want to plead guilty to the charge, so he talk about two hours, . . . say he was going to get me a whole lot of time if I didn't plead guilty." He further testified that Terry told him that if he pled

guilty "they might give me fifty years," otherwise, he would get two life sentences. He also stated that he did not want to confess " 'cause I told him I be lying if I say I did [it]," but that he made the statement because his attorney "told me to give it."

He also testified that he understood the *Miranda* warnings given by Harding and that the statement was given voluntarily, freely, under no threats or promises, and without force. He further stated that, at one point, he objected to Terry's withdrawal from the case because "he was my lawyer, he was so deep in the case."

The testimony of Simmons, another attorney, was relevant only to the motion for a second preliminary hearing. Simmons testified that he had represented Cox, the co-defendant, and had used the preliminary hearing as a discovery technique to ascertain the evidence against his client. Simmons attended the subsequent preliminary hearing for Davis and was of the opinion that Davis received minimal representation by Sager and Terry because they did not conduct vigorous cross-examination of Sidney Silverman, the key witness. Robertson, who attended a part of the preliminary hearing, was of the same opinion. The evidence shows that Sager and Terry attended the preliminary hearing for Cox during which Simmons thoroughly cross-examined Silverman.

The defendant maintains that the statement was constitutionally incompetent as evidence against him and should have been suppressed, because the evidence establishes that, through ineffective representation, he was forced to confess. He contends that his retained attorneys were "actively engaged in assisting the prosecution in the investigation of the case, thereby rendering [their] assistance ineffective and the statement involuntary." We disagree.

We hold that the evidence in this case supports the trial court's finding that the confession was voluntary. There is not a scintilla of evidence in this record to support the defendant's argument that his retained attorneys were "actively engaged in assisting" the Commonwealth's Attorney, or any other person in authority, in the investigation of the case. The attorneys were not persons in authority nor were they acting with the apparent sanction of any person in authority. Harding was the "person in authority," and the defendant concedes that his conduct was beyond reproach.

The chronology is important. The confession was not one extracted from the defendant within hours of his arrest. Over two months had elapsed between the employment of counsel and the confession. Sager and Terry had heard Detective Harding and Silverman testify at the preliminary hearing.[1] The defendant had been indicted, and the trial was less than one week away. It is apparent that Terry and Sager realized that they were confronted with a hopeless case to defend. According to Silverman's account, the murder was unprovoked and brutal. A heavy sentence was in the offing. The trial court could have inferred from the evidence that Terry and Sager hoped to obtain cooperation from the Commonwealth's Attorney and that they had merely advised Davis that he would probably receive a lighter sentence if he confessed. The trial court was not required to believe the defendant's testimony. Indeed, the defendant himself admitted that his statement was voluntary.

Even assuming the advice to confess was a mistake and assuming, but not deciding, that ineffective representation by a retained attorney which results in a confession renders the statement involuntary, nevertheless, the evidence in this record does not show ineffective representation but merely demonstrates a possible error of strategy or judgment. *Brooks* v. *Peyton*, 210 Va. 318, 322, 171 S.E.2d 243, 247 (1969).

The foregoing applies, in part, to our rejection of the defendant's next contention, which is that he was entitled to a second preliminary hearing because he was "denied the effective assistance of counsel at the abbreviated preliminary hearing held on October 3, 1973, in violation of the [constitutional] rights afforded him . . . ." The defendant complains because only a few questions were asked of Silverman and because some of the testimony from Cox's hearing was stipulated. Manifestly, no statute or Rule of Court affords the accused a *right* to use the preliminary hearing as a discovery vehicle. *Williams* v. *Commonwealth*, 208 Va. 724, 729, 160 S.E.2d 781, 784 (1968). It was purely a matter of the attorneys' judgment, under these facts, whether or not to participate in the defendant's preliminary hearing in a more aggressive manner.

---

[1] At the trial, Silverman testified that he was standing close to the victim when he was shot and identified the defendant as the gunman.

■ Finally, we agree with the defendant that the trial court erred when it limited the cross-examination of the Commonwealth's witness Bey during the trial on the merits. As we shall demonstrate, however, such error was harmless.

Bey, a convicted felon jailed at the time, testified that he was standing on the street within a block of the jewelry store at the time of the crime. He stated that he saw two men running from the store. He went to the store and gave Detective Harding a description of the men. Thereafter, he was arrested at the scene because the "officer . . . had a warrant [outstanding] for me for a check." At the trial, Bey identified the defendant as being one of those he saw leaving the jewelry store.

On cross-examination, Bey admitted that he had been convicted of a felony in this trial court and that he was then in the Richmond jail waiting to be sentenced. It was established that he had been convicted in October, 1973, and that his sentencing had originally been scheduled for December 19, 1973, but was postponed to January 29, 1974, less than a week after the instant trial.

Counsel for the defendant was prevented by the trial court from attempting to elicit from Bey that his true motive for testifying against the defendant was to receive favorable "consideration" from the Commonwealth on his yet to be pronounced sentence and on any subsequent sentence as a recidivist, because of a prior felony conviction. This was error, since the line of questioning related to Bey's credibility as a witness. *See Woody* v. *Commonwealth,* 214 Va. 296, 299, 199 S.E.2d 529, 532 (1973). It was harmless error, however, because of Leroy Jones' testimony.

Jones, also a convicted felon and jailed, testified as a witness for the defendant. He stated that Bey told him, within two weeks of the trial, that his only purpose for testifying against the defendant was to receive favorable consideration from the court on his sentences. Jones also testified that Bey told him that he (Bey) committed the crimes for which the defendant was charged. In view of Jones' testimony, and from a review of the record as a whole, we are satisfied that the defendant was not

prejudiced by the trial court's error and it was therefore not reversible.

For the reasons stated, the judgment of the trial court is

*Affirmed.*