UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and Senior Judge Frank
Argued at Norfolk, Virginia

NATHANIEL CHARLES McCOY, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 1836-17-1                JUDGE TERESA M. CHAFIN
NOVEMBER 13, 2018

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge

Martin N. Speroni (Saunders & Ojeda, P.C., on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a jury trial, Nathaniel Charles McCoy, Jr., (appellant) was convicted in the

Circuit Court of the City of Suffolk (trial court) of first-degree murder in violation of Code

§§ 18.2-30 and 18.2-32; conspiracy to commit murder in violation of Code § 18.2-22; murder by

mob in violation of Code §§ 18.2-38, 18.2-39, and 18.2-40; and wounding in the commission of

a felony in violation of Code § 18.2-53.  On appeal, appellant contends the trial court abused its

discretion and violated appellant's right of confrontation by limiting his cross-examination of

Tremayne Johnson, appellant's co-defendant and a witness for the Commonwealth, regarding the

statutory range of punishment Johnson would avoid by testifying against appellant in accordance

with the terms of his plea agreement.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004).

In the course of appellant's three-day jury trial, the Commonwealth called appellant's co-defendant Johnson as a witness in its case-in-chief. Johnson testified that he, appellant, and Kyle Purvis were present for and participated in the killing of Donte Williams on January 20, 2015. Johnson testified that three or four days before Williams was killed, he overheard appellant talking to Purvis about "planning to attack and kill Donte Williams." Johnson knew that there had been issues between appellant and Williams regarding the spread of rumors, and he surmised that appellant still held a "grudge."

According to Johnson, on the morning of January 20, he and Purvis were in appellant's driveway when appellant showed them what Johnson described as a silver-colored "handsaw," which consisted of two circular handles connected by a wire-like material that was the approximate thickness of a telephone cable.[1] After showing them the hand tool, appellant suggested they purchase gloves. When Johnson asked why, appellant said they were to avoid "getting any cuts or bruises or anything on our hands or knuckles." Later that day, Johnson saw appellant and Purvis return from a hardware store with zip ties. Johnson testified that, without being prompted, appellant said they were going to use them "to tie [Williams] up."

Johnson testified that Purvis invited Williams to appellant's house that night between 9:00 and 10:00 p.m. Johnson said he needed to go to the store to buy cigarettes, and appellant

---

[1] While Johnson did not testify as such, this tool was referred to elsewhere in the record as a "garrote."

asked Williams if he wanted a ride. After getting cigarettes, appellant, Johnson, Purvis, and Williams rode around in the car before parking near a foot-bridge at Mathews Lake. Johnson testified that he got out and smoked a cigarette while appellant was "fidgeting around" in the trunk. After all four men were out of the car, they walked onto the bridge and exchanged small talk.

Johnson testified that appellant suddenly grabbed and restrained Williams from behind. Johnson testified that appellant turned to him and said, "Come on, [Johnson]. Get your lick. You need to get your lick." Johnson admitted that he struck Williams' jaw with his fist. Williams fell to his knees, and Johnson saw appellant pull out the hand tool he saw earlier that morning and put it around Williams' neck. Appellant began pulling the hand tool back and forth to choke Williams. Johnson testified that Purvis then struck Williams in the head repeatedly with a hammer. Upon hearing the sounds of the hammer hitting Williams' head, Johnson told appellant and Purvis to stop. Appellant asked why but did not release Williams.

After what Johnson thought was about a minute, appellant leaned Williams' body onto the bridge over the edge. Johnson did not see Williams' body moving. Johnson testified that Purvis struck Williams with the hammer a few more times, and appellant said, "Just why don't you just hurry up and die?" Johnson started walking away, telling appellant and Purvis that they needed to leave. Appellant said he needed help, and Johnson turned back to see appellant and Purvis push Williams off the bridge. As he turned and started walking again, Johnson heard a splash that he assumed was Williams' body hitting the water. Johnson testified that he, appellant, and Purvis got back in the car and left. In the car, appellant accused Johnson of backing out of the attack. Johnson testified that he did not know what happened to the hand tool afterward, but he knew that Purvis had thrown the hammer in the water.

- 3 -

On cross-examination, Johnson admitted that he was a convicted felon and that he was currently serving a term of probation that was subject to revocation. He testified that in connection with the current case, he had pled guilty to a number of charges. Outside the presence of the jury, defense counsel stated the intention to ask Johnson about the statutory penalties for a first-degree murder charge that was to be *nolle prosequied* under his plea agreement. Counsel argued that it was an appropriate question to show Johnson's bias and motive to testify falsely against appellant. The Commonwealth objected to the question, arguing that the statutory penalties facing Johnson were the same penalties facing appellant because appellant was currently on trial for first-degree murder. For this reason, the Commonwealth argued that it would be improper for the jury to hear such information regarding punishment during the guilt phase of trial.

The trial court sustained the objection, ruling that because appellant was charged with the same offenses as Johnson, Code § 19.2-295.1 made it inappropriate for the jury to be confronted with the information of potential punishment during the guilt phase of trial. The trial court stated that the jury was allowed to know that Johnson pled guilty to second-degree murder after being charged with first-degree murder, but that the court was not going to allow examination as to the amount of punishment. The trial court then allowed defense counsel to proffer the question for the record.

Once in front of the jury, Johnson admitted pleading guilty to second-degree murder by mob, conspiracy to commit murder, and wounding in the commission of a felony. He explained that any sentences he received for those charges would run consecutively. He further testified that, based on the terms of his plea agreement, he hoped the Commonwealth would *nolle prosequi* a charge of first-degree murder in exchange for his full cooperation in the cases against appellant and Purvis. Finally, Johnson confirmed multiple times in his testimony that the

Commonwealth was solely responsible for determining whether Johnson's cooperation satisfied the terms of the plea agreement. A copy of Johnson's plea agreement was received and entered as a defense exhibit. The jury convicted appellant of the charges as noted above, and appellant now brings this appeal.

## II. ANALYSIS

On appeal, appellant contends that the trial court abused its discretion in contravention of the Confrontation Clause of the Sixth Amendment where it prevented him from questioning Johnson about the statutory range of punishment that he would avoid if he cooperated with the Commonwealth and testified against appellant. Appellant argues that being prohibited from eliciting such testimony denied him the opportunity to develop evidence of Johnson's bias and motivation to testify falsely against appellant, which was relevant evidence for the jury to hear.

"[T]o the extent the trial court makes an error of law in the admission of evidence, 'an abuse of discretion occurs,'" Abney v. Commonwealth, 51 Va. App. 337, 345, 657 S.E.2d 796, 800 (2008) (quoting Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000)), and thus, "evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court,'" id. (quoting Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006)). It is well-settled in Virginia that the accused has an absolute right, when not abused, to cross-examine prosecution witnesses to show bias or motivation, and that right rests upon the accused's constitutional right to confront one's accusers. Hewitt v. Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984); Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977); Davis v. Commonwealth, 215 Va. 816, 822, 213 S.E.2d 785, 789 (1975); Woody v. Commonwealth, 214 Va. 296, 299, 199 S.E.2d 529, 531-32 (1973); Moore v. Commonwealth, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961).

In exercising that right, "a defendant is entitled to show that testimony of a prosecution witness was motivated by an expectation of leniency in a future trial." Hewitt, 226 Va. at 623, 311 S.E.2d at 114 (quoting Whittaker, 217 Va. at 968, 234 S.E.2d at 81). Although usually allowed generous latitude to examine "anything tending to show the bias on the part of a witness," Scott v. Commonwealth, 18 Va. App. 692, 694, 446 S.E.2d 619, 619-20 (1994) (quoting Henning v. Thomas, 235 Va. 181, 188, 366 S.E.2d 109, 113 (1988)), such leeway does not grant a cross-examiner unlimited liberties, id. at 694, 446 S.E.2d at 620. "The scope of cross-examination in general, and the extent of testimonial impeachment in particular, are left to the sound discretion of the trial court and are not subject to review unless plainly abused." Id. at 693-94, 446 S.E.2d at 619. However, "[i]t is only after the right of cross-examination has been substantially and fairly exercised that the allowance of further cross-examination becomes discretionary with the court." Moore v. Commonwealth, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961).

The limitations the trial court imposed on defense counsel's cross-examination of Johnson were not in error. The trial court permitted counsel a fair opportunity to establish Johnson's potential bias or motivation where counsel elicited from Johnson that he was facing a substantial amount of consecutive prison time but could avoid a first-degree murder charge by testifying for the Commonwealth. Johnson further testified that the Commonwealth held the power to ultimately decide whether Johnson's cooperation was sufficient to satisfy the terms of the plea agreement.

However, appellant's questioning sought to go beyond informing the jury of the possibility that Johnson might avoid the first-degree murder charge itself. Appellant specifically wanted to ask and elicit that the statutory punishment for first-degree murder ranged from twenty years to a life sentence. Because appellant was also charged with first-degree murder, any

- 6 -

mention of the sentence that Johnson was potentially facing would have informed the jury of the sentencing range for a crime for which appellant was then being tried. The trial court was certainly well within its discretion to prohibit this from occurring. See Walls v. Commonwealth, 38 Va. App. 273, 279, 563 S.E.2d 384, 387 (2002) ("[T]he available range of punishment upon conviction for a crime is not relevant to the issue of guilt or innocence.").

Despite being prohibited from questioning Johnson about the penalty range of first-degree murder, appellant was allowed to and did in fact elicit testimony that Johnson had pled guilty to second-degree murder by mob, conspiracy to commit murder, and wounding in the commission of a felony. Johnson expressly stated that he hoped his cooperation would earn leniency. Appellant was even able to elicit that the specific leniency Johnson hoped to receive in exchange for his cooperation was that the Commonwealth would *nolle prosequi* the charge of first-degree murder. From this information, the jury could infer that such a situation would be significant personal motivation for giving favorable testimony on behalf of the Commonwealth. As such, the purpose of the prohibited question had been accomplished by the testimony already available to the jury. Such inferences were then at the jury's disposal in determining Johnson's credibility as a witness and any weight to be given his testimony against appellant.

Because the trial court considered appellant's right to present evidence of Johnson's bias and motivation while also considering the relevance of the penalty facing appellant for the same charge, the trial court did not abuse its discretion by precluding appellant from inquiring about the range of punishment for first-degree murder. Cf. Whittaker, 217 Va. at 967-68, 234 S.E.2d at 81 (holding that the trial court erred in prohibiting a defendant from asking *any* questions regarding alleged leniency in sentencing that may have motivated a witness to testify against the defendant).

III.  CONCLUSION

For the reasons stated, we affirm the ruling of the trial court.

<u>Affirmed.</u>