STATE OF NORTH CAROLINA v. RONALD JAMES HAROLD

No. 44PA84

(Filed 30 January 1985)

1. **Burglary and Unlawful Breakings § 6— instructions on dwelling—proper**

In a prosecution for first degree murder and first degree burglary where the evidence showed that the deceased had been living in a house for five months prior to her death, her brother had been staying there for a month prior to the killing, and deceased was occupying the home on the night of her killing with her two children, her brother, and another man, the court did not err in failing to instruct the jury that it could convict the defendant of first degree burglary only if the house entered was owned by the deceased and the defendant had no ownership interest therein. The relevant inquiry is whether the house is the *dwelling* of another, not whether it is *owned* by another. G.S. 14-51.

**2. Homicide § 25.2— prosecution for murder and burglary—instruction on first degree murder—conviction for murder not dependent on burglary**

A conviction for first degree murder was not dependent upon a burglary conviction where the court charged the jury only on the theory that the killing was committed with premeditation and not on the theory that the killing occurred pursuant to a felony.

Justice VAUGHN took no part in the consideration or decision of this case.

ON writ of certiorari to review the judgment of *Judge Robert E. Gaines* entered February 17, 1978 in Superior Court, CATAWBA County.

The defendant was tried on indictments charging him with first degree murder and first degree burglary. He was convicted of both charges. Upon recommendation of the jury, the trial court sentenced the defendant to life imprisonment for the murder conviction. He also received a life term for the first degree burglary conviction. The defendant did not appeal.

Subsequently, after nearly five years, the defendant petitioned this Court for a writ of certiorari to review the case. The petition was granted March 6, 1984. Heard in the Supreme Court October 8, 1984.

*Rufus L. Edmisten, Attorney General, by William Farrell, Assistant Attorney General, for the State.*

*Warren A. Hutton for defendant appellant.*

MITCHELL, Justice.

The defendant contends that the trial court erred by failing to instruct the jury that it must find as an essential element of first degree burglary that the dwelling entered was owned by the deceased and that the defendant possessed no ownership interest. The defendant also contends that the first degree murder conviction must be vacated because the evidence shows that it was based on the first degree burglary conviction which resulted from the erroneous instruction. We find the defendant's contentions to be without merit.

The State's evidence tended to show that at one time the defendant and the deceased, Catherine Glover Dease, had been romantically involved. The relationship ended, however, in 1976.

On the evening of September 15, 1977, Dease was at her home in Conover with her brother, her two children, and Nathaniel Leader. Early that evening the defendant Ronald James Harold came to her home. The defendant and Dease began to argue about her plans to marry Leader. The confrontation quickly escalated to violence as the defendant pushed Dease to the floor. Her brother and Leader interceded, and the defendant was told to leave the house. At some point during the argument, the defendant was heard to say to Dease "I will get you for this."

Dease's brother, David Glover, agreed to drive the defendant to Hickory. During the drive the defendant told Glover that he was going to kill Dease. Glover took the defendant to Hickory and then returned to his sister's house. Shortly after Glover arrived at the house, Dease and Leader returned from Newton where they had gone to "make out a warrant."

At approximately 10:00 p.m. Dease observed the defendant walking up to the house carrying a gun. The defendant unsuccessfully attempted to gain entry through the front door which was locked. He then discovered an unlocked kitchen window, pushed it up, and entered the house. Dease immediately ran to her bedroom and jumped out of a window. She proceeded to run to a neighbor's house. The defendant ran out of the house following her. He caught Dease and threw her to the ground. As Dease begged for her life, the defendant shot her at point blank range. She died shortly thereafter.

Dr. Guy Guarino, a board certified pathologist, conducted an autopsy on the body of Dease. Dr. Guarino testified that in his opinion the deceased died from a gunshot wound to the chest which caused massive hemorrhaging. He stated that in his opinion death occurred within two minutes of the shooting.

The defendant took the stand and testified that he first met the deceased in May 1974. They dated for several months until Dease moved to New York. She returned to North Carolina in March 1975 and once again began dating the defendant. Eventually Dease and her children moved into an apartment with the defendant.

The defendant testified that sometime later they decided to purchase a house in Conover. The defendant went with Dease to

buy the house after he had been released from jail on another crime. The house was placed in Dease's name. The defendant stated that he and Dease had agreed that after his pending criminal case was over, title to the house would be changed to his name and they would be married. The defendant said he gave Dease money for the electric power for the house and bought some decorations for the bedroom and bathroom. He also helped clean out the house. The defendant stated that he lived in the house with Dease and her children until the week prior to her death on September 15, 1977.

The defendant further testified that he went to the house on the evening of September 15 and found Leader there. He tried to talk with Dease, but she refused to discuss anything with him. An argument ensued and David Glover drove him to Hickory. He denied knocking Dease down or telling her brother that he planned to kill her. The defendant acquired a gun in Hickory and returned to the house in Conover to discuss matters with Dease. When no one would open the front door, the defendant went to the kitchen window. Dease ordered him to get off her property. The defendant stated that Dease's reference to the house as "her" property upset him. He then entered the house through the unlocked kitchen window and chased Dease through the house and into the yard of a neighboring home. Dease fell and the defendant stood over her. The defendant testified that he wanted to reach down and help her but instead "something" came over him causing him to shoot her.

Dr. Billy Royal, a psychiatrist, testified for the defendant. Dr. Royal stated that he had examined the defendant following the shooting and concluded that he suffered from paranoid schizophrenia. Dr. Royal stated that while this illness could cause a person to do things that he had no control over, he could not say that this had occurred here. He further testified that in his opinion, the defendant was aware of the distinction between right and wrong.

Several witnesses testified that the defendant had a good reputation in the community and was not known as a violent person. According to some of these witnesses, the defendant and Dease were dating in 1977. The defendant's grandmother stated that the defendant was living with Dease as late as a week before the killing.

At the conclusion of the guilt-innocence determination phase of the trial, the jury returned verdicts finding the defendant guilty of first degree murder and first degree burglary. A sentencing hearing was convened to determine the sentence to be imposed for the first degree murder conviction. The jury recommended that the defendant be sentenced to life imprisonment. The trial court entered a life sentence for the murder and a life sentence for the first degree burglary conviction.

[1] The defendant's sole assignment of error concerns the trial court's instructions on first degree burglary. At the conclusion of its explanation of the elements of first degree burglary, the trial court stated in pertinent part, "So, members of the jury, I charge that if you find from the evidence, beyond a reasonable doubt, that on or about the 15th day of September 1977, Ronald James Harold, raised a window of Catherine Dease's dwelling house and entered the house without her consent. . . ." The defendant argues that the jury should have been instructed that it could convict him of first degree burglary only if it found that the house entered was owned by Dease and that he had no ownership interest therein.

The constituent elements of first degree burglary are: (1) The breaking (2) and entering (3) in the nighttime (4) into a dwelling house or sleeping apartment (5) of another (6) which is actually occupied at the time of the offense (7) with the intent to commit a felony therein. *See* N.C.G.S. 14-51 (1981); *State v. Beaver*, 291 N.C. 137, 229 S.E. 2d 179 (1976); *State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967); *State v. Allen*, 186 N.C. 302, 119 S.E. 504 (1923). The requirement that the dwelling house or sleeping apartment broken into be that of someone other than the defendant was an element of burglary at common law and is implicitly incorporated in N.C.G.S. 14-51. *See, e.g., State v. Freeman*, 307 N.C. 445, 298 S.E. 2d 376 (1983); *State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542 (1981); *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976).

The defendant's emphasis on the issue of the ownership of the dwelling house here is misplaced. We have stated that the reason for prohibiting the offense of first degree burglary "is to protect the habitation of men, where they repose and sleep, from meditated harm." *State v. Surles*, 230 N.C. 272, 275, 52 S.E. 2d 880, 882 (1949). We have also held that in burglary cases occupa-

tion or possession of a dwelling is equivalent to ownership, and actual ownership of the premises need not be proved. *State v. Beaver*, 291 N.C. 137, 229 S.E. 2d 179 (1976). These holdings recognize that the inquiry relevant to this element of the crime is whether the premises is the *dwelling* of another, not whether it is *owned* by another. The trial court was not required to give any instruction concerning the ownership of the house, as the concept of title is not controlling in ascertaining whether the offense has been committed.

In order to sustain a conviction for burglary it is incumbent upon the State to produce substantial evidence tending to show that the premises broken into is the dwelling house of another. "Dwelling house" has been defined as "The house in which a man lives with his family; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence." Black's Law Dictionary 596 (rev. 4th ed. 1968). During the State's case-in-chief, evidence was presented which showed that Dease had been living in the house for five months prior to her death, her brother had been staying there for a month prior to the killing, and that on the night of the killing, Dease, her two children, her brother and Nathaniel Leader were occupying the house. We hold that this evidence was sufficient to support a finding that the structure broken into was the dwelling house of another, that other person being Catherine Dease.

[2] Finally, we point out that even if the trial court had been required to give the instruction now put forth, the defendant's argument that the first degree murder conviction would have to be vacated is erroneous. In its instruction on the first degree murder indictment, the trial court charged the jury only on the theory that the killing was committed with premeditation and deliberation and did not charge on the theory that the killing occurred pursuant to a felony. The murder conviction was in no way dependent upon the burglary conviction.

The defendant received a fair trial free from prejudicial error.

No error.

Justice VAUGHN took no part in the consideration or decision of this case.