STATE OF NORTH CAROLINA v. LARRY SINGLETARY

No. 555A95

(Filed 31 July 1996)

## 1. Burglary and Unlawful Breakings § 10 (NCI4th)— premises in wife's possession—burglary by husband

Where the premises are in the sole possession of the wife, the husband can be guilty of burglary if he makes a nonconsensual entry into her premises with the intent to commit a felony therein. The controlling question in burglary cases is one of possession or occupation rather than ownership or property interests.

**Am Jur 2d, Burglary §§ 8 et seq., 39.**

**Occupant's absence from residential structure as affecting nature of offense as burglary or breaking entering. 20 ALR4th 349.**

**Maintainability of burglary charge, where entry into building is made with consent. 58 ALR4th 335.**

**Minor's entry into home of parent as sufficient to sustain burglary charge. 17 ALR5th 111.**

2. **Burglary and Unlawful Breakings § 57 (NCI4th)— apartment possessed by wife—burglary by husband**

The State's evidence was sufficient to establish the element of first-degree burglary that defendant wrongfully entered the dwelling house "of another" where it tended to show that defendant's wife had left Winston-Salem, where she had been living with defendant, and obtained an apartment on her own in Greensboro; she was the sole lessee of the apartment; defendant moved in with his wife in the Greensboro apartment one month later; defendant thereafter moved out of the apartment following an argument, took all or most of his belongings, and returned his apartment key to his wife; and defendant's wife had exclusive possession of the apartment when defendant broke into and entered the apartment two days later.

Am Jur 2d, Burglary §§ 27, 45.

3. **Burglary and Unlawful Breakings § 149 (NCI4th)— first-degree burglary—instruction on own home not required**

The trial court did not err by failing specifically to instruct the jury that defendant could not be found guilty of burglary if the dwelling was his own home where the trial court's instructions substantially complied with the approved pattern jury instructions on burglary; defendant failed to request a special instruction; and the evidence did not support defendant's contention that the victim's apartment was his home at the time of the breaking or entering.

Am Jur 2d, Burglary § 69.

4. **Burglary and Unlawful Breakings § 165 (NCI4th)— first-degree burglary—intent to commit felonious assault—instruction on misdemeanor breaking and entering not required**

The State's evidence in a first-degree burglary prosecution relevant to the time before defendant broke and entered his estranged wife's apartment supports the inference that defendant

intended to commit a felonious assault at the time of the breaking or entering, and defendant's after-the-fact assertion that his intention to commit a felony was formed after he broke and entered the apartment did not negate the felonious intent shown by his actions so as to require the trial court to instruct on the lesser included offense of misdemeanor breaking or entering, where the evidence tended to show that defendant went to his wife's apartment with a gun sometime between 2:00 a.m. and 3:00 a.m; he parked his car on the far side of the apartment building; defendant covered the peephole of the apartment door as he attempted to use his son to get his wife to open the door; defendant yelled to his wife that he knew she had a male companion in the apartment; when his wife refused to let him in, defendant used a screwdriver to dismantle the doorknob, forced the door open, and drew his gun immediately after he stepped inside; and when the male companion ran out the door, defendant chased him and shot him in the back.

**Am Jur 2d, Burglary §§ 27, 69.**

**Propriety of lesser-included-offense charge to jury in federal criminal case—general principles. 100 ALR Fed. 481.**

5. **Homicide § 257 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of first-degree murder based upon the theory of premeditation and deliberation where it tended to show that defendant parked his car in the parking lot on the far side from his estranged wife's apartment; he carried a gun and screwdriver with him to the door; when his wife refused to open the door of the apartment, he yelled at her, "I know you got that n---- in there"; he used the screwdriver to dismantle the doorknob, forced the door open, and drew his gun immediately after he stepped inside; he chased the victim as the victim fled from the apartment, yelled, "you want to f--- with me motherf-----, take this," and shot the victim in the back; and he then "turned and walked away, as if he had done what he wanted to do."

**Am Jur 2d, Homicide § 439.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2D 1435.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

6. **Homicide § 706 (NCI4th)— discovery of adultery—heat of passion—absence of special instruction—harmless error**

Any error in the trial court's failure to give the jury a special instruction on heat of passion as it relates to discovering a spouse in the act of adultery was harmless where the jury was instructed on voluntary manslaughter in addition to first-degree and second-degree murder; the court instructed that voluntary manslaughter is "the unlawful killing of a human being, by an intentional act, done with malice, or done in the heat of passion, suddenly aroused by some adequate provocation"; and the jury rejected verdicts of voluntary manslaughter and second-degree murder and found defendant guilty of first-degree murder.

**Am Jur 2d, Homicide § 527.**

**Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

**Propriety of lesser-included-offense charge to jury in federal homicide prosecution. 101 ALR Fed. 615.**

7. **Evidence and Witnesses §§ 672, 770 (NCI4th)— waiver of objection—similar evidence—corroborative evidence—harmless error when became substantive**

Defendant's objection to the admission for corroborative purposes of a burglary victim's statement to a detective that defendant told her to open the door "because I know you got that n---- in there" was waived when the detective gave similar testimony without objection. Furthermore, any error in the admission of this statement for corroborative purposes was rendered harmless when the victim testified that defendant made this statement to her and it then became substantive evidence.

STATE v. SINGLETARY

[344 N.C. 95 (1996)]

**Am Jur 2d, Appellate Review § 753; Trial §§ 411 et seq.**

**Necessity and sufficiency of renewal of objection to, or offer of, evidence admitted or excluded conditionally. 88 ALR2d 12.**

**Sufficiency in federal court of motion in limine to preserve for appeal objection to evidence absent contemporary objection at trial. 76 ALR Fed. 619.**

Justice WEBB concurring.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Walker (Russell G., Jr.), J., at the 28 August 1995 Criminal Session of Superior Court, Guilford County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment was allowed 19 March 1996. Heard in the Supreme Court 10 April 1996.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was tried noncapitally and found guilty of first-degree murder based on premeditation and deliberation and the felony murder rule. Defendant was also found guilty of first-degree burglary. The trial judge consolidated the two convictions for sentencing and sentenced defendant to life imprisonment.

The evidence at trial tended to show that on Saturday, 27 August 1994, defendant's wife, Garnett Jean Singletary, went out with her two sisters-in-law, Rachel and Schmora. The women met one of Garnett's co-workers, Samuel Learon Bailey IV, at a local nightclub. On the following Monday, 29 August, Garnett fought with her husband; he agreed to move out of the apartment they had been sharing in Greensboro, North Carolina. Defendant returned the apartment key to Garnett, took his clothing and VCR, and moved in with his mother in Winston-Salem.

On 31 August Garnett left her sons at her apartment with Rachel because one of the children had contracted chicken pox. When Garnett returned home Rachel and the children were not there. Garnett called Schmora to ask about the children's whereabouts. Schmora said she assumed that Rachel had taken the boys to the defendant's mother's house in Winston-Salem. Garnett did not expect her children to return that night. Schmora brought Garnett some money that afternoon, and Garnett told Schmora that she was going to have company that night.

At 10:30 p.m. on 31 August, Bailey visited Garnett at her apartment, and they had sexual intercourse. Sometime between 2:00 a.m. and 3:00 a.m. on 1 September, Garnett heard the doorbell ring. Garnett asked who was there, and one of her sons answered. Garnett asked her son who he was with, and he answered, "My Aunt Rachel." Garnett then asked her son whose finger was covering the peephole, and he answered that his father's was. Garnett told defendant to leave the children in the hallway. Defendant told Garnett that if she did not open the door, he would shoot it open. Defendant also stated, "Open the door because I know you got that n----- in there."

Defendant used a screwdriver to dismantle the doorknob. Garnett stood behind the door as defendant stepped inside, reached behind his back, and pulled out a gun. Garnett ran past defendant, out the door, and down the apartment steps to get help. Bailey also ran out the door, falling on the steps before getting up to run again. A neighbor testified that she saw two black men running across the parking lot; she heard one man yell, "You want to f--- with me, motherf-----, take this." The man raised his arm and shot the other man in the back; he then "turned and walked away, as if he had done what he wanted to do." Bailey died as the result of a gunshot wound to the back.

Defendant turned himself over to the police and gave a statement. Defendant told the police that he had taken his children to their mother's house and that he arrived at the apartment about 1:00 a.m.; parked the car; and got his gun out of the trunk because "if somebody was in the apartment, [he] wasn't going to get hurt." Defendant stated that the lights were off in the apartment and that he rang the doorbell for fifteen to twenty minutes. Defendant stated he then went back to his car to get a screwdriver. At this point defendant noticed that the bedroom light was on in the apartment. Defendant went back up the apartment steps; his wife was now at the door, but the door was still closed. Defendant's wife would not let him in the apartment, so

defendant "fumble[d] with the lock." Defendant stated that he thought his wife eventually unlocked the door. When defendant got inside the apartment, he saw a black man in the hallway. Defendant stated that he was upset because he assumed the man had "been in [his] bed." Defendant stated that the man pushed him and ran, so defendant pulled his gun and fired. Defendant stated that he was halfway or all the way down the apartment steps the first time he fired. Defendant thought he fired again as the man was running. The man then "ran into the dark," and defendant "never saw him fall." Defendant went to his car and headed back to Winston-Salem, where he turned himself in.

In defendant's first assignment of error, he contends the trial court committed reversible error in denying his motion to dismiss the burglary charge against him because "the uncontradicted evidence showed that the dwelling which defendant entered was his own residence." Defendant argues the State thus failed to prove a necessary element of the offense.

The elements of first-degree burglary are: (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein. N.C.G.S. § 14-51 (1993); *State v. Gibbs*, 335 N.C. 1, 436 S.E.2d 321 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994); *State v. Harold*, 312 N.C. 787, 325 S.E.2d 219 (1985). Defendant contends that the State failed to establish that he wrongfully entered the dwelling house "of another." As a basis for this contention, defendant maintains that he, his wife, and their children lived in the apartment as a family until approximately two days before the murder. Although defendant and Garnett argued and defendant left the residence, defendant maintains that his departure was merely for a "cooling off" period. Defendant points out that the parties had separated several times in the past and that neither party had taken steps toward obtaining a divorce. Defendant contends that he did not relinquish any rights or property interests stemming from his marital status and that he still had the right to enter the family residence.

[1] The law of burglary was designed "to protect the habitation of men, where they repose and sleep, from meditated harm." *State v. Surles*, 230 N.C. 272, 275, 52 S.E.2d 880, 882 (1949). In *State v. Cox*, 73 N.C. App. 432, 326 S.E.2d 100, *disc. rev. denied*, 313 N.C. 605, 330 S.E.2d 612 (1985), the Court of Appeals held that the marital relation-

ship, in and of itself, does not constitute a complete defense to the offense of burglary in the first degree. We agree. The Florida Supreme Court in *Cladd v. State*, 398 So. 2d 442 (Fla. 1981), held that "where premises are in the sole possession of the wife, the husband can be guilty of burglary if he makes a nonconsensual entry into her premises with intent to commit an offense." *Id.* at 444. We adopt this position. Therefore, the controlling question in burglary cases is one of possession or occupation rather than ownership or property interests.

[2] In the instant case the evidence shows that at the time of the breaking and entering, the apartment was in the sole possession of Garnett. In April 1994 Garnett left Winston-Salem, where she had previously lived with defendant, and obtained the Greensboro apartment on her own. Garnett was the sole lessee of the apartment, and she owned all the furnishings in the home except for the television and VCR. Defendant moved in with Garnett in the Greensboro apartment approximately one month later. However, on 29 August defendant moved out of the apartment, took all or most of his belongings, and returned Garnett's key to her. As of 29 August Garnett had exclusive possession of the dwelling. Under these facts we reject defendant's argument. The trial court did not err in submitting the first-degree burglary charge to the jury. This assignment of error is overruled.

[3] In two related arguments defendant challenges the trial court's instructions to the jury. First, defendant argues that the trial court erred by failing to specifically instruct the jury that he could not be guilty of burglary if the dwelling involved was his own home. This contention has no merit. The trial court's instructions substantially conformed with the pattern jury instruction on burglary, N.C.P.I.— Crim. 214.10 (1989), which was approved by this Court in *State v. Harold*, 312 N.C. 787, 325 S.E.2d 219. In addition, defendant failed to request a special instruction, and as discussed above, the evidence does not support defendant's contention that Garnett's apartment was his home at the time of the breaking and entering. This assignment of error is overruled.

Second, defendant contends the trial court erred by instructing the jury that it could consider that the murder was committed during the perpetration of the felony of burglary. Specifically, defendant argues that since he did not enter a dwelling house "of another," there was no burglary; thus, the offense of burglary could not provide the

underlying felony for felony murder. For the reasons previously stated, this assignment of error is overruled.

[4] In his next assignment of error, defendant contends the trial court erred in refusing to submit misdemeanor breaking or entering as a lesser-included offense of first-degree burglary. As stated above, first-degree burglary is the breaking and entering of an occupied dwelling of another in the nighttime with the intent to commit a felony therein. N.C.G.S. § 14-51; *State v. Gibbs*, 335 N.C. 1, 436 S.E.2d 321; *State v. Harold*, 312 N.C. 787, 325 S.E.2d 219. Misdemeanor breaking or entering does not require intent to commit a felony within the dwelling. N.C.G.S. § 14-54(b) (1993) (effective until 1 January 1995; effective date of change subsequently amended to 1 October 1994); *State v. Peacock*, 313 N.C. 554, 330 S.E.2d 190 (1985). Defendant argues that there was substantial evidence that he did not possess a felonious intent when he broke into the apartment.

A trial court is required to give instructions on a lesser-included offense only when there is evidence to support a verdict finding the defendant guilty of the lesser offense. *State v. Tucker*, 329 N.C. 709, 721, 407 S.E.2d 805, 812 (1991). " 'The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense.' " *State v. Peacock*, 313 N.C. at 558, 330 S.E.2d at 193 (quoting *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981)).

In the instant case the trial court instructed the jury that it could find defendant guilty of first-degree burglary if it found that defendant broke and entered into an occupied dwelling house during the nighttime without the tenant's consent and that at the time of the breaking and entering, the defendant "intended to commit assault with a deadly weapon, with intent to kill, inflicting serious injury, or intended to commit the felonious assault of assault with a deadly weapon, inflicting serious injury."

Defendant contends there was evidence showing that when he broke and entered the apartment, he did not intend to commit an assault. In support of this contention, defendant relies on his statement to the police that he carried his gun to the apartment because "if somebody was in the apartment, [he] wasn't going to get hurt." Defendant contends this statement shows that he brought the gun with him for protection, rather than to commit an assault. Defendant argues this statement was corroborated by the testimony of Garnett

that defendant often carried a gun in his car for protection and would bring the gun inside on occasions when he and his family returned home late at night. In addition, defendant relies on evidence that he did not have his weapon drawn when he entered the apartment, that he never threatened his wife, and that he did not know Bailey and had not seen or heard him inside. Defendant further relies on evidence that he was driving his sick children home in the middle of the night to see their mother and was justifiably upset when Garnett would not let them enter the apartment.

The State's evidence tended to show that defendant went to Garnett's apartment with a gun sometime between 2:00 a.m. and 3:00 a.m. Defendant parked his car on the far side of Garnett's apartment building. Defendant covered the peephole of Garnett's apartment door as he attempted to use his son to get Garnett to open the door. Defendant yelled to Garnett, "I know you got that n------ in there." When Garnett refused to let defendant in, he dismantled the doorknob, forced the door open, and drew his gun immediately after he stepped inside.

An after-the-fact assertion by the defendant that his intention to commit a felony was formed after he broke and entered is not enough to warrant an instruction on the lesser-included offense of misdemeanor breaking or entering unless there is some "before the fact evidence to which defendant's statements afterwards could lend credence." *State v. Gibbs*, 335 N.C. at 53-54, 436 S.E.2d at 351. The "before the fact evidence" relied on by defendant in this case is insufficient to warrant an instruction on misdemeanor breaking or entering.

On the night in question, defendant clearly was not concerned about his safety or the safety of his family when he dismantled the doorknob with a screwdriver and forced his way into the apartment. The evidence suggests that defendant drew his weapon immediately after entering the apartment and that defendant knew his wife had male company. Defendant's contention that he was taking his sick children home in the middle of the night does not explain the location where he parked his car; the purpose for covering the peephole; or the statement, "I know you got that n------ in there."

The record reveals no evidence which might convince a rational juror to convict the defendant of misdemeanor breaking or entering. The evidence relevant to the time before defendant broke and entered the apartment supports the inference that defendant possessed the

intent to commit an assault; defendant's contentions do not negate the felonious intent suggested by his actions. On this record we conclude the trial court did not err in refusing to instruct on the lesser-included offense of misdemeanor breaking or entering.

[5] Defendant contends in his next assignment of error that the evidence was insufficient to submit the first-degree murder charge to the jury on the theory of premeditation and deliberation. On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged, or of a lesser-included offense, and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). To be "substantial," evidence must be "existing and real, not just seeming or imaginary." *Id.* at 66, 296 S.E.2d at 652. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *Id.*

Defendant argues that the evidence was insufficient to support a conviction of first-degree murder on the theory of premeditation and deliberation. In *State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994), we defined premeditation and deliberation as follows:

Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.

*Id.* at 635, 440 S.E.2d at 835-36 (citation omitted). A defendant's conduct before and after the killing is a circumstance to be considered in determining whether he acted with premeditation and deliberation. *State v. Vaughn*, 324 N.C. 301, 305, 377 S.E.2d 738, 740 (1989).

In the instant case the State's evidence tended to show that defendant parked his car in the parking lot on the far side from his

wife's apartment; that he carried a gun and screwdriver with him to the door; that he used the screwdriver to completely dismantle the doorknob; that he yelled to his wife, "I know you got that n----- in there"; that he chased the victim as the victim fled; that he yelled, "you want to f--- with me motherf----, take this"; that he shot the victim in the back; and that he then "turned and walked away, as if he had done what he wanted to do." When viewed in the light most favorable to the State, this evidence was clearly sufficient to support a finding of premeditated and deliberate first-degree murder. Accordingly, we overrule this assignment of error.

[6] Defendant next contends the trial court erred by refusing to instruct the jury in accordance with his proposed special instruction on heat of passion. Defendant made a written request that the jury be instructed on heat of passion as it relates to discovering a spouse in the act of adultery. Defendant's requested instruction read:

> [A] killing committed during the heat of passion is not murder but manslaughter. I further instruct you that the law recognizes that heat of passion may arise when a defendant discover [sic] a spouse in an act of adultery. Accordingly I charge you that when one spouse discovers the other and a paramour in the very act of intercourse, or under circumstances clearly indicating that the act has just been completed, or was severely proximate, and the killing follows immediately, it is manslaughter.

The court did instruct the jury on voluntary manslaughter, but stated only that voluntary manslaughter consists of "the unlawful killing of a human being, by an intentional act, done without malice, or done in the heat of passion, suddenly aroused by some adequate provocation."

Where an instruction is requested by a party and the instruction is supported by the evidence and is a correct statement of the law, it is error for the trial court not to instruct in substantial conformity with the requested instruction. *State v. Farmer*, 333 N.C. 172, 424 S.E.2d 120 (1993). However, in the present case, even assuming *arguendo* that some evidence supported a special instruction on heat of passion, the trial court's failure to give such an instruction was harmless error.

In *State v. Shoemaker*, 334 N.C. 252, 432 S.E.2d 314 (1993), the trial court instructed the jury on first-degree and second-degree murder; and the jury returned a verdict of guilty of first-degree murder.

The defendant argued that the trial court erred by refusing to instruct the jury on voluntary manslaughter. Quoting *State v. Freeman*, 275 N.C. 662, 170 S.E.2d 461 (1969), this Court stated:

"A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of [defendant's] guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant."

*Id.* at 271, 432 S.E.2d at 324 (quoting *State v. Freeman*, 275 N.C. at 668, 170 S.E.2d at 465). We have applied this rationale to cases where the defendant requested an instruction on voluntary manslaughter based on a heat of passion. *See State v. Bunnell*, 340 N.C. 74, 455 S.E.2d 426 (1995).

In the instant case, unlike *Shoemaker* and *Bunnell*, the jury was instructed on voluntary manslaughter in addition to first- and second-degree murder. The jury was instructed that voluntary manslaughter is "the unlawful killing of a human being, by an intentional act, done without malice, or done in the heat of passion, suddenly aroused by some adequate provocation." The jury nevertheless rejected the verdicts of voluntary manslaughter and second-degree murder and returned a verdict of guilty of first-degree murder. Accordingly, any error in the trial court's failure to give the jury a special instruction on heat of passion was harmless. This assignment of error is overruled.

[7] Finally, defendant contends the trial court erred in overruling his objection and allowing a portion of Garnett's pretrial statement to the police to be admitted as evidence against defendant. During Garnett's testimony the prosecutor asked her to read a statement she had given Detective Tim Parrish shortly after the shooting. Defendant requested that the trial court give an instruction that the statement was being offered for the limited purpose of corroborating Garnett's trial testimony, and the trial court did so. Defendant objected when Garnett read, "[Defendant] told me to open the door, because I know you got that n----- in there," on the grounds that this statement did not corroborate Garnett's trial testimony. The trial court overruled this objection.

To be admissible as corroborative evidence, prior consistent statements must corroborate the witness's testimony. *State v. Howard*, 320 N.C. 718, 724, 360 S.E.2d 790, 794 (1987). Corroborative

testimony may contain new or additional information " 'when it tends to strengthen and add credibility to the testimony which it corroborates.' " *Id.* (quoting *State v. Kennedy*, 320 N.C. 20, 35, 357 S.E.2d 359, 368 (1987)). The State cannot, however, introduce prior statements that directly contradict sworn testimony. *State v. McDowell*, 329 N.C. 363, 384, 407 S.E.2d 200, 212 (1991).

In the instant case defendant waived any objection to this testimony; furthermore, any error in the admission of this statement as corroborative of Garnett's testimony was harmless. First, Detective Parrish also testified as to the statement given by Garnett. When the prosecutor asked Parrish what Garnett said defendant told her through the door, defense counsel again asked for, and received, a limiting instruction on corroboration. However, when Parrish responded that Garnett stated, "Larry told me to 'Open the door, because I know you got that n----- in there,' " defense counsel did not object. "It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." *State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979). Therefore, the jury was entitled to consider this evidence to the extent it found that this evidence corroborated Garnett's testimony. *See State v. Rogers*, 299 N.C. 597, 264 S.E.2d 89 (1980).

Furthermore, Garnett was later recalled to the witness stand, and the following transpired:

[PROSECUTOR]: Ms. Singletary, did you tell Detective Parrish, when you made your statement to him, that "Larry told me to 'Open the door, because I know you got that n----- in there' "?

[GARNETT]: Yes.

[DEFENSE COUNSEL]: Objection.

[THE COURT]: Overruled.

[PROSECUTOR]: Did Larry Singletary say that through the door on the morning of September 1st?

[GARNETT]: Yes.

[PROSECUTOR]: Do you remember him saying that?

[GARNETT]: Yes.

At this point the comment became substantive evidence, and any error as to the admission of the statement for corroborative purposes was harmless. This assignment of error is overruled.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.

Justice WEBB concurring.

I concur in the result reached by the majority, but I do not agree with all its reasons.

I do not believe it is harmless error if the court refuses to charge on heat of passion when there is evidence to support it and the jury finds the defendant guilty of first-degree murder. In this case, I would find no error because I do not believe there is evidence to support such a charge.

The evidence shows the defendant's passion was not suddenly aroused by finding his wife with a paramour. The defendant went to his wife's apartment with the intention of doing her or someone harm. His intent was formed before the apartment door was opened. I do not believe what happened afterward aroused his passion so that malice was eliminated.