STATE v. BLYTHER

[138 N.C. App. 443 (2000)]

━━━━━━━

STATE OF NORTH CAROLINA v. GARY LEONARD BLYTHER

No. COA99-331

(Filed 20 June 2000)

1. **Burglary and Unlawful Breaking or Entering— first-degree burglary—dwelling house of another—sufficiency of evidence**

   The trial court did not err by denying defendant's motion to dismiss the first-degree burglary charge and by denying his request to submit to the jury the issue of whether defendant had a claim of right to enter his grandmother-victim's residence because: (1) the victim had exclusive possession of her residence at the time defendant broke and entered into it; (2) the victim expressly refused to allow defendant entry into her house, and the screen door had been locked to keep others, including

defendant and his girlfriend, outside; and (3) the facts that defendant had a key, paid rent, kept personal belongings in the house, and had recently lived there, do not change this result.

## 2. Constitutional Law— double jeopardy—first-degree burglary—first-degree murder under felony murder rule—no violation

Defendant's double jeopardy rights were not violated by his convictions of first-degree murder under the felony murder rule and first-degree burglary based on defendant's claim of an alleged inconsistency in the finding of specific intent to murder as one of the elements of burglary, without a finding of premeditation and deliberation required for first-degree murder, because: (1) defendant has not been prosecuted a second time for the same offense after acquittal since first-degree murder based on either deliberation and premeditation or the felony murder rule is not the same offense as first-degree burglary; (2) defendant has not been prosecuted a second time for an offense after conviction; and (3) defendant has not been punished more than once for the same offense since his sentence on the underlying felony of burglary was arrested.

Appeal by defendant from judgment entered 20 May 1998 by Judge W. Douglas Albright in Moore County Superior Court. Heard in the Court of Appeals 14 February 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Bruce T. Cunningham, Jr., for defendant.*

McGEE, Judge.

Defendant was indicted on 10 February 1997 for first degree murder and first degree burglary. The victim was defendant's grandmother, who was "sickly and weak" and "didn't put up a fight" according to defendant's girlfriend, Rebecca Ann DeLouise (DeLouise), who was present during the crimes. Defendant was convicted of both offenses and was sentenced on 20 May 1998 to life imprisonment without parole for first degree murder under the felony murder rule and judgment was arrested for first degree burglary.

DeLouise testified to the following at defendant's trial: DeLouise met Gary Leonard Blyther (defendant) when they were in-patients in

the psychiatric ward at Moore Regional Hospital. Upon leaving the hospital, they resided together in DeLouise's trailer. DeLouise "was having problems with the landlord because of [her] pets" on or about 1 May 1996, so they moved into the home of defendant's grandmother, Hattie J. Blyther (Ms. Blyther) at 107 Blyther Street in Aberdeen, North Carolina. Defendant and DeLouise obtained a key to Ms. Blyther's home on 1 May 1996.

DeLouise and defendant cashed their disability checks and paid Ms. Blyther $300 "for living expenses" or "rent" on 3 July 1996; they had purchased food for the household prior to that time. Of the $300, DeLouise paid $200 and defendant paid $100. Also that day, defendant and DeLouise purchased crack cocaine in Southern Pines and used it in Southern Pines, Aberdeen and Cameron. They spent the evening of 3 July in Aberdeen at the residence of Carol Campbell (Campbell), a friend of DeLouise's.

At Campbell's home, defendant and DeLouise met Gary Strickland (Strickland) for the first time. Defendant and DeLouise drove Strickland to cash a check and then drove him to Raeford. Strickland purchased liquid cocaine, which was "shot up" by "all of [them]" at Campbell's trailer. Later that night, defendant and DeLouise "came home later than [Ms. Blyther] wanted [them] to, and she didn't want [them] to stay there because of it." Ms. Blyther did not let them in her house and she asked them not to stay there anymore. Defendant and DeLouise were not able to enter the house at that time, and they spent the night instead at Campbell's trailer. The next day, 4 July 1996, DeLouise and defendant again stayed at Campbell's trailer where "there was consumption of more drugs."

On the evening of 5 July 1996, Strickland, his son, defendant, DeLouise and Campbell were together at Campbell's house. Defendant and DeLouise had no money, but defendant procured more drugs and owed Strickland and Campbell approximately $200 or $250 for the drugs. Defendant and DeLouise planned to go to Ms. Blyther's house "to take her money," and defendant planned "to kill her." They left Campbell's house in DeLouise's car at around midnight. DeLouise and defendant first drove to an abandoned house to smoke crack as they had done on prior occasions. They decided to leave the car at that location "because it was secluded, and the car wouldn't be seen."

They walked to Ms. Blyther's house. The screen door was locked, and defendant unlocked it with his finger through a hole in the

STATE v. BLYTHER

[138 N.C. App. 443 (2000)]

screen. He then opened the inside door with his key. Both defendant and DeLouise entered the house, and DeLouise walked to Ms. Blyther's bedroom door. DeLouise testified that defendant took a pillow from a couch and walked into Ms. Blyther's room, where she was sleeping on her back. DeLouise saw defendant put a pillow over Ms. Blyther's face and heard Ms. Blyther mumble, "Lord Jesus." Defendant held Ms. Blyther with his left hand and with his right hand took money out from under her brassiere, where she normally kept money. A few minutes later defendant walked or "run-walk[ed]" out the back door. DeLouise left the house through the back door, closing it behind her. Defendant presented evidence at trial but did not testify himself. Defendant was convicted of first degree murder and first degree burglary. Defendant appeals.

[1] Defendant first contends that the trial court erred in denying his motion to dismiss the burglary charge and denying his request to submit to the jury the issue of whether the defendant had a claim of right to enter Ms. Blyther's residence. He argues that a person cannot be guilty of burglarizing his own house, and that defendant was living in the home he broke into and entered the morning of 6 July 1996. Defendant presented evidence that he had been staying overnight with his girlfriend in one room of the house for approximately two months before the murder, all of his belongings were in the house, he and DeLouise had paid $300 for household expenses or rent, and Ms. Blyther had given him a key to the house.

Within his first argument, defendant also argues the trial court erred in denying his written request for a jury instruction on burglary. Defendant requested the following instruction:

Now with respect to the element of whether the house at 107 Blyther Street was the dwelling house of another, I instruct you that the State has the burden of proving beyond a reasonable doubt that the Defendant was not a resident of 107 Blyther St. at the time of the entry. If Mr. Blyther was entitled to have access to 107 Blyther street at the time of the alleged offense then he would be not guilty of the offense of burglary. The element of breaking and entering the dwelling house of another means that the dwelling must be exclusively the dwelling of Hattie Blyther and not the dwelling of Hattie Blyther and the defendant. In considering this element you may take into account, among other things, whether the Defendant's clothes and personal belongings were located there.

The trial court declined to instruct the jury as requested by defendant and instead used a pattern jury instruction. The trial court also omitted the word "tenant," denoted as an alternative to "owner," in the pattern instruction as the individual who may give consent. N.C.P.I., Crim. 214.10. Defendant argues this omission prejudiced him in that "a tenant has similar rights to an owner in burglary cases." Moreover, defendant insists the trial court's instruction referring to "her" consent "eliminat[ed] any possibility the jury could conclude the defendant resided in the house as a tenant."

First and second degree burglary are codified in N.C. Gen. Stat. § 14-51 (1999):

> There shall be two degrees in the crime of burglary as defined at the common law. If the crime be committed in a dwelling house . . . and any person is in the actual occupation of any part of said dwelling house . . . at the time of the commission of such crime, it shall be burglary in the first degree.

Ms. Blyther was "in the actual occupation" of the house when she was murdered, and thus if defendant committed burglary, it was burglary in the first degree. At common law,

> [t]he elements of the crime of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) of another (6) which is actually occupied at the time of the offense (7) with the intent to commit a felony therein.

*State v. Ledford*, 315 N.C. 599, 606, 340 S.E.2d 309, 314 (1986) (citation omitted); *State v. Harold*, 312 N.C. 787, 791, 325 S.E.2d 219, 222 (1985) (citations omitted); *see State v. Accor and State v. Moore*, 277 N.C. 65, 72-73, 175 S.E.2d 583, 588 (1970), *aff'd*, 281 N.C. 287, 188 S.E.2d 332 (1972).

Our Supreme Court has recognized a two-fold purpose for establishing the element of ownership:

> There are only two reasons for requiring ownership of the house to be stated in the indictment for burglary: (1) for the purpose of showing on the record that the house alleged to have been broken into was not the dwelling house of the accused, inasmuch as one cannot commit the offense of burglary by breaking into one's own house, and (2) for the purpose of so identifying the

offense as to protect the accused from a second prosecution for the same offense.

*State v. Beaver,* 291 N.C. 137, 141, 229 S.E.2d 179, 181-82 (1976) (citations omitted).

The Court in *Beaver* discussed the meaning of "owner" for purposes of burglary.

[I]n a burglary indictment, "the occupant of the building at the time of the burglary is the owner," and it is unnecessary to allege ownership of the title to the building. The decisions of this Court require only that the breaking and entering in the nighttime with intent to commit a felony be into a dwelling or a room used as a sleeping apartment which is actually occupied at the time of the offense.

*Id.* at 141, 229 S.E.2d at 182 (citations omitted). Thus, in burglary cases, occupation or possession of a dwelling or sleeping apartment is tantamount to ownership. *Id.*; *Harold,* 312 N.C. at 791-92, 325 S.E.2d at 222 (citation omitted) ("[I]n burglary cases occupation or possession of a dwelling is equivalent to ownership, and actual ownership of the premises need not be proved."); *State v. Singletary,* 344 N.C. 95, 102, 472 S.E.2d 895, 899 (1996) ("[T]he controlling question in burglary cases is one of possession or occupation rather than ownership or property interests."). Indeed, a burglary frequently has been said to require "only that the breaking and entering in the nighttime with intent to commit a felony be into a dwelling or a room used as a sleeping apartment which is actually occupied at the time of the offense," which eliminates the "of another" language. *Beaver,* 291 N.C. at 141, 229 S.E.2d at 182; *see also State v. Freeman,* 307 N.C. 445, 448, 298 S.E.2d 376, 378 (1983) (defining first degree burglary without the "of another" element). *Accord State v. Meadows,* 306 N.C. 683, 689, 295 S.E.2d 394, 398 (1982), *overruled on other grounds by State v. Grier,* 307 N.C. 628, 645, 300 S.E.2d 351, 361 (1983); *State v. Simpson,* 303 N.C. 439, 449, 279 S.E.2d 542, 548 (1981); *State v. Person,* 298 N.C. 765, 768, 259 S.E.2d 867, 868 (1979); *State v. Davis,* 282 N.C. 107, 116, 191 S.E.2d 664, 670 (1972).

However, our Supreme Court has specified that "[t]he requirement that the dwelling house or sleeping apartment broken into be that of someone other than the defendant was an element of burglary at common law and is implicitly incorporated in N.C.G.S. 14-51."

*Harold*, 312 N.C. at 791, 325 S.E.2d at 222 (citations omitted). "[I]t is incumbent upon the State to produce substantial evidence tending to show that the premises broken into is the dwelling house of another." *Id.* at 792, 325 S.E.2d at 222. Indeed, at least three North Carolina cases have focused on the requirement that a breaking and entering must occur on property "of another" to constitute a burglary.

In *Harold*, the defendant and his former girlfriend had purchased a house and lived in it together until the week before he murdered her. *Harold*, 312 N.C. at 789-90, 325 S.E.2d at 221. The defendant was convicted of first degree burglary, and also first degree murder based on premeditation and deliberation. He argued that the jury instructions should not have read "without her consent" and that they should have required a finding that he had no ownership interest in the house to permit a burglary conviction. *Id.* at 791, 325 S.E.2d at 222. Our Supreme Court stated that the defendant's emphasis on ownership was "misplaced," explaining that "the reason for prohibiting the offense of first degree burglary 'is to protect the habitation of men, where they repose and sleep, from meditated harm.'" *Id.* (quoting *State v. Surles*, 230 N.C. 272, 275, 52 S.E.2d 880, 882 (1949)). The *Harold* Court held that the evidence was sufficient to find the residence to be a "dwelling house of another," where the victim had lived in the house for five months preceding her death and had occupied the house when she was murdered. *Harold*, 312 N.C. at 792, 325 S.E.2d at 222.

In *Singletary*, the defendant and his wife left their home in Winston-Salem and the wife leased an apartment alone in Greensboro, as the sole lessee. *Singletary*, 344 N.C. at 102, 472 S.E.2d at 899. The defendant moved into his wife's apartment one month later, but then moved out following an argument. He returned his key to his wife and took most or all of his belongings with him. Two days later he broke and entered into the apartment. In his motion to dismiss the burglary charge, the defendant argued that he did not break and enter into the dwelling house "of another" in that the apartment was his residence and he had left it only for a "cooling off" period, as they had argued many times previously but had not permanently separated. *Id.* at 101, 472 S.E.2d at 899. He also challenged the jury instructions on this issue. Our Supreme Court held that the evidence did not support a finding that the apartment was the defendant's dwelling where his wife had maintained exclusive possession for the two days prior to defendant's breaking and entering. *Id.* at 102, 472 S.E.2d at 899. In so holding, the Court adopted the reasoning of a

decision from the Florida Supreme Court that a husband can be guilty of burglary if he makes a nonconsensual entry onto the premises which are under the sole possession of his wife with the intent to commit an offense. *Id.*

Similarly, in *State v. Cox*, 73 N.C. App. 432, 326 S.E.2d 100, *disc. review denied*, 313 N.C. 605, 330 S.E.2d 612 (1985), the defendant, his wife and their daughter had lived together in a rented house until the defendant moved out, which to his wife signified a permanent separation. The defendant continued to visit his daughter and contribute to the support of his family. A year after the defendant had lived apart from his wife and daughter, he telephoned his wife one night at around midnight asking permission to come to the house. When she refused, he asked to speak to their daughter, but his wife said she was spending the night elsewhere. This led to an argument, after which the wife hung up the telephone. Shortly thereafter she heard the defendant exit his truck outside the house, and defendant knocked on the door calling her name. Once the defendant had kicked down the door, he stabbed a man who was in the house. *Id.* at 435, 326 S.E.2d at 102. The defendant argued that his motion to dismiss the charge of first degree burglary should have been granted because he and his wife were still married and he kept clothing and tools in the house, but our Court rejected the argument. We held the defendant entered the dwelling "of another" where the evidence showed that the defendant had lived elsewhere for more than a year while his wife occupied the house, paid rent and utilities, and forbade him to enter the home that night. *Id.* at 436-37, 326 S.E.2d at 102-03.

We follow the reasoning in *Harold, Singletary* and *Cox* to hold that defendant committed burglary in this case. As in each of those cases, the victim in this case had exclusive possession of her residence at the time defendant broke and entered into it. Furthermore, Ms. Blyther had expressly refused to allow defendant entry into her house, and the screen door had been locked to keep others, including defendant and DeLouise, outside. *See Cox*, 73 N.C. App. at 435, 326 S.E.2d at 102 (wife expressly refused defendant's request to come to the house). The facts that defendant had a key, paid rent, kept personal belongings in the house, and had recently lived there, do not change this result. *See id.* (defendant burglarized house in which he had personal belongings and had helped to financially support its residents); *Harold*, 312 N.C. at 792, 325 S.E.2d at 222 (defendant burglarized house that he helped his girlfriend purchase); *Singletary*, 344 N.C. at 99-100, 472 S.E.2d at 898 (defendant moved out only two days

before the burglary). For the same reasons, we also reject defendant's argument challenging the jury instructions. *See Harold*, 312 N.C. at 791, 325 S.E.2d at 222 (rejecting identical arguments); *Singletary*, 344 N.C. at 102, 472 S.E.2d at 899 (rejecting defendant's argument that jury instructions were improper).

[2] In his second argument, defendant claims the trial court erred in denying his motion to dismiss the first degree burglary conviction notwithstanding the verdict. He insists the jury's verdicts were inconsistent and should be set aside pursuant to the double jeopardy clause of the United States and North Carolina Constitutions. Defendant finds inconsistency in the finding of specific intent to murder as one of the elements of burglary, without a finding of premeditation and deliberation required for first degree murder. He contends that if the jury did not find premeditation and deliberation, the jury could not have logically found the specific intent required for burglary, and that he was prejudiced by essentially being tried twice on this issue.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. "The North Carolina Constitution does not have a Double Jeopardy Clause, but the protection against double jeopardy has been considered an integral part of the Law of the Land Clause." *State v. Rambert*, 341 N.C. 173, 175 n.1, 459 S.E.2d 510, 512 (1995) (citing *State v. Ballard*, 280 N.C. 479, 186 S.E.2d 372 (1972)). "Also, the United States Supreme Court has held that the Double Jeopardy Clause of the United States Constitution is applicable to the states through the Fourteenth Amendment." *Rambert*, 341 N.C. at 175 n.1, 459 S.E.2d at 512 (citing *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707 (1969). It "protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Gilley*, 135 N.C. App. 519, 521, 522 S.E.2d 111, 113 (1999); *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986) (citations omitted); *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65 (1969), *overruled in part on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 802, 104 L. Ed. 2d 865, 874-75 (1989).

First, defendant has not been prosecuted a second time for the same offense after acquittal. First degree murder, based upon either

deliberation and premeditation or the felony-murder rule, is not the same offense as first degree burglary, because each offense contains an element not included in the other. *State v. Parks*, 324 N.C. 94, 97, 376 S.E.2d 4, 7 (1989) ("Clearly, the offenses of first degree burglary and first degree murder both require proof of an additional fact which the other does not."). Therefore, a jury may properly convict defendant of first degree burglary while not finding the existence of an element required for first degree murder. *State v. Parks*, the case cited by defendant, defeats his own position. *Parks* held that a defendant could not sustain a double jeopardy claim where he was convicted of premeditated first degree murder and first degree burglary, for the reason that the crimes were not the same. *Id.* at 97-98, 376 S.E.2d at 7. Defendant argues double jeopardy because here, unlike *Parks*, there was no conviction of premeditated murder. This distinction does not invoke double jeopardy because first degree felony-murder, for which defendant was convicted, also is an offense different from first degree burglary. Thus, defendant was not prosecuted a second time for the same offense following an acquittal. *Id.* at 98, 376 S.E.2d at 7 ("Since it is clear that here at least one essential element of each crime is not an element of the other, we find no merit in defendant's contentions that he was subjected to double jeopardy.").

Second, defendant has not been prosecuted a second time for an offense after conviction. Finally, defendant has not been punished more than once for the same offense. He has not been punished more than once for his first degree murder conviction pursuant to the felony-murder rule, and his sentence on the underlying felony of burglary was arrested by the trial court. *See State v. Wilson*, 345 N.C. 119, 125, 478 S.E.2d 507, 512 (1996).

For the reasons above, we hold that the trial court did not err.

No error.

Judges EAGLES and HORTON concur.