COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Bumgardner
Argued at Richmond, Virginia


HENRY LEVI TURNER
                                            OPINION BY
v.    Record No. 2097-99-2          JUDGE RICHARD S. BRAY
                                         AUGUST 1, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
                    Richard S. Blanton, Judge

            Michael J. Brickhill (Michael J. Brickhill,
            P.C., on brief), for appellant.

            Thomas M. McKenna, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Henry Levi Turner (defendant) was convicted in a bench trial

on indictments alleging numerous offenses, including "break[ing]

and enter[ing] in the daytime the residence" of his estranged

wife, Florine Denise Turner (wife), "with the intent to commit

murder while armed with a deadly weapon," and a like entry "in the

nighttime . . . with the intent to commit assault and battery,"

violations of Code §§ 18.2-90 and -91, respectively.  On appeal,

defendant contends that he cannot be guilty of such offenses

because the subject residence was jointly owned by defendant and

his wife.  He further argues that the court erroneously permitted

wife to testify in violation of the marital privilege afforded by

Code § 19.2-271.2.  Finding no error, we affirm both convictions.

The substantive evidence is uncontroverted.  Defendant and wife separated in early 1997, with wife and the infant daughter born to the marriage remaining in the former marital residence, a mobile home, and defendant "staying" elsewhere, despite joint ownership of the trailer with wife.  On December 15, 1997, the Buckingham County Juvenile and Domestic Relations District Court (J&D court) convicted defendant of an assault and battery upon wife and, as a condition of suspending the attendant sentence, ordered "no contact or violence toward her" by defendant.  Wife subsequently "switched the locks" on the trailer and shared keys only with her daughter and mother.

During the evening hours of February 21, 1998, defendant telephoned wife "five or ten times," threatening "to kill [her]." Following the final call, "around 12:30 a.m.," wife and child retired for the evening but were soon awakened by the sounds of "pounding" on the "bedroom window" and defendant shouting, "open the m. . .f. . . door or I'll kick it open."  Wife immediately attempted to telephone her mother, a resident of a nearby trailer, but the "line was dead."  Meanwhile, defendant "kicked the door in" and entered the kitchen area of the trailer.  Fearful, wife "ran by him," with the child "running behind," and escaped to her mother's home.

On February 23, 1998, defendant approached wife at her place of employment, "walked into the lobby" and declared, "you don't

believe me; I'm going to kill you, and . . . left." At the conclusion of the workday, wife returned to the trailer, accompanied by an acquaintance, Clarence Taylor. When the two entered the residence, defendant, hidden inside and armed with a shotgun, fired the weapon at Taylor and wife, injuring both. Although wounded, Taylor escaped, but defendant "grabbed" wife, threatening, "I'm going to kill you," and held her captive for "four or five hours" before surrendering to police.

Relying upon the "marital privilege" established by Code § 19.2-271.2, defendant unsuccessfully objected at trial to wife's testimony relating to the events of February 21, 1998. Later, at the conclusion of the Commonwealth's case-in-chief and, again, following the presentation of all evidence, defendant moved the court to strike, arguing that, as "owner of this residence" jointly with wife, he could not be convicted of breaking and entering his "own property." Defendant pursues both theories on appeal.

## II.

Code § 18.2-89 provides, inter alia, that, "[i]f any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary . . . ," "an offense identical to common law burglary, save that the element of intent is expanded to include intent to commit a larceny." Rash v. Commonwealth, 9 Va. App. 22, 24, 383 S.E.2d 749, 750 (1989). The dual elements, "dwelling house" and "of another," "were essential because

common-law burglary found its theoretical basis in the protection of man's right of habitation," 2 Wayne R. LaFave, Substantive Criminal Law § 8.13(c) (1986), an embodiment of "the ancient notion that a man's home was his castle and . . . he had the right to feel safe therein." Rash, 9 Va. App. at 25, 383 S.E.2d at 751; see Clark v. Commonwealth, 66 Va. (25 Gratt.) 908 (1874). Thus, "the term 'dwelling house' in Code § 18.2-89 means a place which human beings regularly use for sleeping[,]" and the crime was, "'at common law, primarily an offense against the security of [another's] habitation, and that is still the general conception of it.'" Rash, 9 Va. App. at 26, 25, 383 S.E.2d at 751 (citation omitted).

Code §§ 18.2-90 and 18.2-91[1] expand traditional burglary to include entry without breaking in the nighttime or by breaking in

---

[1] Code § 18.2-90 provides, in pertinent part:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

(Emphasis added.)

> Code § 18.2-91, provides, inter alia,

> If any person commits any of the acts mentioned in § 18.2-90 with intent to . . . commit assault and battery, he shall be guilty of statutory burglary, punishable by confinement in a state correctional facility

the daytime of any dwelling house and "any automobile, truck or trailer, if such . . . is used as a dwelling or place of human habitation, with intent to commit murder . . . , " Code § 18.2-90, "or . . . assault and battery . . . [.]"  Code § 18.2-91; <u>see</u> <u>Johnson v. Commonwealth</u>, 18 Va. App. 441, 445, 444 S.E.2d 559, 561-62 (1994).[2]  In enacting Code §§ 18.2-90 and -91, the legislature, therefore, modified the common law to safeguard both conventional dwelling houses and other specified structures, "used as a dwelling or place of human habitation," from unlawful invasion.  <u>Allard v. Commonwealth</u>, 24 Va. App. 57, 64, 480 S.E.2d 139, 142 (1997); <u>see</u> <u>Graybeal v. Commonwealth</u>, 228 Va. 736, 739, 324 S.E.2d 698, 699-700 (1985).

Defendant contends that the right of habitation protected by both the common law and related burglary statutes is subordinate to title or ownership interests.  He asserts that the crime first offends the security of the property owner and, therefore, reasons that "a person cannot break and enter a structure in which he has a proprietary interest."  Defendant's argument, however, discounts the sanctity of habitation, upending the gravamen of the offense, a view that has been rejected by jurisdictions throughout the country.

---

for not less than one or more than twenty years or, in the discretion of the jury or the court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both.

[2] Both Code §§ 18.2-90 and -91 also omit the qualifying language of Code § 18.2-89, "of another," following "dwelling house," a circumstance irrelevant to the instant facts.

In Commonwealth v. Majeed, 694 A.2d 336 (Pa. 1997), the Supreme Court of Pennsylvania addressed a similar argument on review of a burglary conviction resulting from Majeed's forcible entry into a home owned exclusively by him, although occupied solely by his estranged wife and children. The couple had been separated for approximately one year, and a court order prohibited Majeed's "presen[ce] on the premises." Id. at 337. In affirming the conviction, the court concluded that "an owner of property may relinquish his or her license or privilege to enter" and, therefore, "legal ownership is not synonymous with license or privilege." Id. at 338. Finding that "Mrs. Majeed and her children, alone, occupied the home," the court reasoned "that [Majeed's] license or privilege to enter the premises had expired." Id.

A similar rationale persuaded the Court of Appeals of Ohio, in State v. Herrin, 453 N.E.2d 1104 (Ohio Ct. App. 1982), to affirm Herrin's burglary conviction for "blast[ing] his way into the side door" of a home jointly owned with his estranged wife. Id. at 1105. At the time of the offense, defendant was "living elsewhere," wife had "changed the door locks so [Herrin] was unable to get in" and "was in control and had custody of the premises." Id. Under such circumstances, "[w]hen [Herrin] forcibly entered the residence without his wife's permission, . . . he committed . . . a burglary." Id. at 1006; see also State v. Singletary, 472 S.E.2d 895, 899 (N.C. 1996) (estranged husband has no marital or proprietary right to re-enter former family residence exclusively occupied by wife); Calhoun v. State, 820 P.2d 819, 821-22 (Okla. Crim. App. 1991) (lawful possession

of property, not ownership, is dispositive issue in burglary prosecution); State v. Harold, 325 S.E.2d 219, 222 (N.C. 1985) (prohibition of burglary protects habitation, not ownership); Knox v. Commonwealth, 225 Va. 504, 507, 304 S.E.2d 4, 6 (1983) (husband's right to consortium with wife is no defense to invasion of her possessory right in property).

Here, wife and daughter enjoyed sole occupancy of the trailer home following the separation of defendant and wife a year prior to the offenses, with defendant continuously residing elsewhere. As a result of subsequent criminal conduct against wife, defendant had been ordered by the J&D court to have no contact with her, a restriction that clearly precluded his habitation of the trailer. Thereafter, wife changed the locks in an effort to further keep husband from the premises. Defendant's return, which resulted in the instant prosecutions, was for criminal purposes, and was attended by violence and forceful entry into the residence. Under such circumstances, defendant's proprietary interest was relegated to wife's superior possessory interest and right to exclusive habitation. Thus, defendant's acts in breaking and entering the home, accompanied by the requisite unlawful intent, offended wife's right of habitation and constituted burglary in violation of Code §§ 18.2-90 and -91, notwithstanding his joint ownership of the property.

### III.

At trial, defendant relied upon former Code § 19.2-271.2 to support his claim of marital privilege to preclude wife's testimony relative to the incident of February 21, 1998. However, the pertinent provision of former Code § 19.2-271.2,

"neither [husband or wife] shall be compelled, nor, without the consent of the other, allowed, to be called as a witness against the other, except" in those instances specified by statute, was amended by the General Assembly in 1996 to delete the language, "nor, without the consent of the other, allowed." Thus, the legislature "eliminated the defendant spouse's privilege to bar the witness spouse from testifying against the defendant[,]" while preserving in the "witness spouse . . . the privilege" to avoid compelled testimony, subject to certain statutory exceptions. Ronald J. Bacigal, Virginia Criminal Procedure § 17-12 (4th ed. 1999); see Code § 19.2-271.2. Here, wife willingly testified, leaving defendant's argument without merit.

Thus, on the facts before us in this appeal, we find defendant's conduct violative of both Code §§ 18.2-90 and -91 and, further, that wife was properly permitted to present related evidence against him. Accordingly, we affirm the convictions.

Affirmed.