COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Elder and
         Senior Judge Hodges
Argued at Salem, Virginia


PAUL MATTHEWS HOLT, III

                                MEMORANDUM OPINION[*] BY
v.   Record No. 2542-01-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                     APRIL 8, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  A. Dow Owens, Judge Designate

            Michelle C. F. Derrico (Law Office of John S.
            Edwards, on briefs), for appellant.

            Richard B. Smith, Senior Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     A jury convicted Paul Matthews Holt, III (appellant) of

unlawful wounding, and the trial court sentenced him to six

months in jail and a fine of $2,500, in accordance with the

jury's recommendation.  On appeal, appellant contends the trial

court erred by:  (1) limiting his cross-examination of the

complaining witness; and (2) barring testimony from the

complaining witness' wife on the grounds of marital privilege.

For the reasons that follow, we reverse and remand for a new

trial should the Commonwealth so choose.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.  Factual Background

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  So viewed, the evidence proved that on the morning of October 17, 2000 appellant and Raymond Charles Peggins, who had been roommates and lovers for approximately two years, had a fight that ended when Peggins was shot in the hip.

Peggins testified about the events of the altercation as follows.  Appellant and Peggins were awakened by a telephone call from a mutual friend who wanted a ride.  The telephone call sparked an argument, and they "had some words and like a little struggle."  Peggins stated appellant "tried to, pretty much . . . manhandle me or something like that, wrestle me, and I put my feet in his chest and I kicked him off me."  The two then went to their respective rooms and dressed; but the argument continued.  Peggins stated that appellant verbally abused him and hit him while he dressed.  At some point during the argument, appellant retrieved a loaded gun from his dresser and put it in his right pocket.

The disagreement escalated, and Peggins announced he was leaving.  Appellant followed Peggins to the door and out onto the porch where Peggins said:  "If you hit me again, I am going to take a warrant out on you."  Appellant swung at Peggins.

-

Peggins dodged the intended blow, and appellant fell "flat on his back." While appellant was on the ground, Peggins saw him pull the gun out of his pocket. As Peggins ran toward a parked car "for safety," he was shot. Peggins asked appellant, "why did you shoot me" then "fell to the ground." Peggins asked appellant to call an ambulance, which he did. Peggins testified that the only time he touched appellant was when he pushed appellant away from him with his feet.

Appellant's version of events was similar, except he stated that Peggins threw the first punch and was the aggressor throughout. Appellant stated he picked up the gun only to keep it from Peggins, who was screaming at him, "Bitch, I'll murder you." Appellant stated that when he followed Peggins outside, Peggins "hit me and when he hit me, I fell on the grass." Peggins then started hitting and kicking appellant. To escape these blows, appellant "started rolling" and the gun fell out of his pocket. Appellant, who is left handed, put his right hand on the gun to keep it away from Peggins. When appellant tried to stand up, Peggins hit him "in the nose." Appellant stated,

> [Peggins] hit me so hard that my head just
> like jerked back, and I fell flat down on
> the ground. When I fell on the ground, I
> heard a pow, and when I went to get back up,
> I looked and [Peggins] said, "Bitch, you
> shot me," and I said, "No, I didn't."

When he realized Peggins had been shot, appellant "ran" to the house and called an ambulance.

-

At trial, appellant sought to introduce into evidence the contents of Peggins' claim for compensation from the Virginia Criminal Injuries Compensation Fund (Claim Form). Appellant argued the Claim Form contained statements that were inconsistent with Peggins' trial testimony. In addition, appellant asserted that the requirements for compensation delineated on the Claim Form, specifically that Peggins could not have been the aggressor or a willing participant in the incident, provided proof of a monetary motive for Peggins to fabricate his testimony. The trial court sustained the Commonwealth's objection to the use of the Claim Form during cross-examination and ruled the Claim Form "ha[d] nothing to do with whether . . . [appellant] shot [Peggins] or not." Appellant was not permitted to ask Peggins any questions about the Claim Form or its contents in the presence of the jury.

Appellant also sought to impeach Peggins' trial testimony about the facts of the fight with statements Peggins made to his estranged wife, Nakia Shelton, about the shooting. The trial court sustained the Commonwealth's objection that the statement of the victim's wife was covered by spousal immunity[1] and instructed appellant not to "pursue this matter at all."

Shelton's proffered testimony detailed two separate conversations she had with Peggins about the shooting. Shelton stated that Peggins told her:

---

[1] Neither Peggins, the victim, nor Shelton, his estranged wife, invoked any type of privilege.

-

> he was in the house and [he and appellant]
> got into it about some muscle relaxers or
> something, some type of pills of
> [appellant's], . . . and they got to arguing
> and exchanging blows, and it started from
> the back of the house all the way out into
> the front yard, and they were arguing, and
> he said he hit [appellant] and knocked him
> on the ground. . . . He said that when he
> was getting ready to hit him again or kick
> him or whatever, he said that [appellant]
> had pulled out the gun.

Shelton also stated that Peggins told her he "was stomping on" appellant while he was on the ground, a clear contradiction of his trial testimony. Shelton said that Peggins "felt he would get more money from the State rather than saying [the shooting] was an accident."

II. Cross-examination of the Complaining Witness

Appellant first contends the trial court erred in limiting his cross-examination of Peggins. Appellant argues he should have been permitted to question Peggins on the statements he made in the Claim Form.[2] We agree and find the analysis in Barker v. Commonwealth, 230 Va. 370, 337 S.E.2d 729 (1985), controlling.

"The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right to be

---

[2] The Commonwealth argues appellant's assignment of error is procedurally barred because he failed to expressly say he wanted to impeach Peggins for "bias." We hold that appellant properly preserved his assignment of error for appeal when he stated on the record that he wished to impeach Peggins as to the inconsistent statements on the Claim Form and by showing Peggins had a motive to fabricate his testimony.

-

confronted with the witnesses against him.'" Ohio v. Roberts, 448 U.S. 56, 62-63 (1980). "The right to confront witnesses secured by the Sixth Amendment encompasses the right to cross-examine them." Rankins v. Commonwealth, 31 Va. App. 352, 364, 523 S.E.2d 524, 530 (2000) (citing Cruz v. New York, 481 U.S. 186 (1987); Douglas v. Alabama, 380 U.S. 415, 418 (1965)). "Cross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process." Clinebell v. Commonwealth, 235 Va. 319, 325, 368 S.E.2d 263, 266 (1988).

"One purpose of cross-examination is to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest." Barker, 230 Va. at 376, 337 S.E.2d at 733 (citing Whittaker v. Commonwealth, 217 Va. 966, 967, 234 S.E.2d 79, 81 (1977)). "The bias of a witness . . . is always a relevant subject of cross-examination." Goins v. Commonwealth, 251 Va. 442, 465, 470 S.E.2d 114, 129 (1996) (citing Norfolk & Western Railway Co. v. Sonney, 236 Va. 482, 488, 374 S.E.2d 71, 74 (1988); see Brown v. Commonwealth, 246 Va. 460, 464, 437 S.E.2d 563, 564-65 (1993)). Accordingly, the Supreme Court of Virginia has "consistently held that the right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute." Hewitt v. Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984) (citing Whittaker, 217 Va. at 968, 234 S.E.2d at 81; Davis v.

-

Commonwealth, 215 Va. 816, 822, 213 S.E.2d 785, 789 (1975);

Woody v. Commonwealth, 214 Va. 296, 299, 199 S.E.2d 529, 531-32

(1973); Moore v. Commonwealth, 202 Va. 667, 669, 119 S.E.2d 324,

327 (1961)).

"Although a trial court may exercise discretion to see that

the right of cross-examination is not abused, the discretion may

be employed only after the right to cross-examine has been

fairly and substantially exercised." Barrett v. Commonwealth,

231 Va. 102, 108, 341 S.E.2d 190, 194 (1986) (emphasis added).

In the instant case, appellant's right to cross-examine Peggins

was not fairly and substantially exercised. Like the appellant

in Barker, appellant attempted to investigate Peggins' possible

bias and motive to fabricate by questioning him about his

request for payment of funds under a victim assistance program.

The Supreme Court of Virginia stated, "We believe that the

matters Barker wished to explore were appropriate subjects of

cross-examination to test [the victim's] credibility. Clearly,

these matters were relevant to establish [the victim's] possible

bias and motive to fabricate." Barker, 230 Va. at 376, 337

S.E.2d at 734. Appellant was neither permitted to introduce the

Claim Form into evidence nor to question Peggins on statements

in the Claim Form that were inconsistent with his trial

-

testimony.[3]  Thus, as in <u>Barker</u>, "we hold that the trial court

erred in restricting [appellant's] cross-examination."  <u>Id.</u>

Although we reverse on this issue, because appellant's second

assignment of error is likely to arise on remand we must

consider it as well.

### III.  Privileged Marital Communications

Appellant next contends the trial court erred in limiting

his cross-examination of Peggins' estranged wife.  We agree.

> In criminal cases husband and wife shall be
> allowed, and, subject to the rules of
> evidence governing other witnesses and
> subject to the exception stated in
> § 8.01-398, may be compelled to testify in
> behalf of each other, but neither shall be
> compelled to be called as a witness against
> the other, except (i) in the case of a
> prosecution for an offense committed by one
> against the other or against a minor child
> of either, (ii) in any case where either is
> charged with forgery of the name of the
> other or uttering or attempting to utter a
> writing bearing the allegedly forged
> signature of the other or (iii) in any
> proceeding relating to a violation of the
> laws pertaining to criminal sexual assault
> (§§ 18.2-61 through 18.2-67.10), crimes
> against nature (§ 18.2-361) involving a
> minor as a victim and provided the defendant
> and the victim are not married to each
> other, incest (§ 18.2-366), or abuse of
> children (§§ 18.2-370 through 18.2-371).

Code § 19.2-271.2.

---

[3] For example, on the Claim Form, Peggins stated that he was earning $200 per week prior to the shooting.  However, at trial, Peggins conceded that he really had not been working consistently.  Although appellant had been giving him some money, Peggins estimated that it amounted to perhaps $100 per week.

-

> Husband and wife shall be competent
> witnesses to testify <u>for or against each
> other</u> in all civil actions; provided that
> neither husband nor wife shall, without the
> consent of the other, be examined in any
> action as to any communication privately
> made by one to the other while married, nor
> shall either be permitted, without such
> consent, to reveal in testimony after the
> marriage relation ceases any such
> communication made while the marriage
> subsisted.

Code § 8.01-398 (emphasis added).[4]  "Such communications include 'all information or knowledge privately imparted and made known by one spouse to the other by virtue of and in consequence of the marital relation.'"  <u>Edwards v. Commonwealth</u>, 20 Va. App. 470, 474, 457 S.E.2d 797, 799 (1995); <u>Osborne v. Commonwealth</u>, 214 Va. 691, 692, 204 S.E.2d 289, 290 (1974); <u>Menefee v. Commonwealth</u>, 189 Va. 900, 912, 55 S.E.2d 9, 15 (1949).

---

[4] The Commonwealth's attorney's <u>sua</u> <u>sponte</u> invocation of "immunity" confused the spousal immunity privilege with "the separate and distinct rule of evidence governing confidential communications between husband and wife."  <u>Stewart v. Commonwealth</u>, 219 Va. 887, 893, 252 S.E.2d 329, 333 (1979). Under the former, a witness spouse cannot be compelled to testify against a defendant spouse at trial.  Pursuant to the statute, however, the privilege rests with the testifying spouse, not the defendant spouse.  <u>See</u> Code § 19.2-271.2; <u>Turner v. Commonwealth</u>, 33 Va. App. 88, 531 S.E.2d 619 (2000). Therefore, neither the Commonwealth nor Peggins had the right to invoke the spousal immunity if Shelton was willing to testify. <u>See</u> <u>Turner</u>, 33 Va. App. at 95, 531 S.E.2d at 622 ("the legislature [has] eliminated the defendant spouse's privilege to bar the witness spouse from testifying against the defendant, while preserving in the witness spouse the privilege to avoid compelled testimony, subject to certain statutory exceptions"). Additionally, the excluded testimony was not "against" the defendant at trial.  Thus, the spousal privilege claimed is inapposite.

-

Assuming without deciding that the statement was a privileged marital communication, we hold the privilege was waived in this case. "Like all privileges, the husband-wife communications privilege can be waived." Charles E. Friend, The Law of Evidence in Virginia, § 7-2 (4th ed. 1993); see also Osborne, 214 Va. 691, 204 S.E.2d 289. During cross-examination, appellant asked Peggins, without objection, whether he told Shelton he was fighting with appellant and was "getting the better" of appellant when he was shot. Peggins replied, "No, nobody is going to fight with a man with a loaded .357 in his pocket." Neither Peggins nor the Commonwealth[5] asserted the privilege when appellant posed the question. Instead, Peggins answered the question and denied he made such a statement to Shelton. By answering the question rather than invoking his privilege, Peggins waived the privilege. See Osborne, 214 Va. 691, 204 S.E.2d 289. Once Peggins denied making the statement, appellant had the right to make the same inquiry of Shelton and elicit testimony about the victim's statement to her that undermined his testimony at trial. Accordingly, it was error for the trial court to exclude from evidence Shelton's testimony regarding Peggins' account of the fight.

_____

[5] Because appellant did not raise the issue at trial, we do not address whether the Commonwealth had standing to raise the marital communication privilege.

-

IV.  Harmless Error

The Commonwealth argues that any error at trial was harmless because the evidence appellant sought to introduce was merely cumulative and could not have affected the verdict.  We disagree.

We must reverse a criminal conviction unless it plainly appears from the record and the evidence given at the trial that the error did not affect the verdict.  An error does not affect the verdict if we can determine, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.  Hanson v. Commonwealth, 14 Va. App. 173, 190, 416 S.E.2d 14, 24 (1992) (internal quotations omitted).  "The effect of an error on a verdict varies widely depending upon the circumstances of the case.  Each case must, therefore, be analyzed individually to determine if an error has affected the verdict."  Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (internal citations and quotations omitted).  "In criminal cases, the requirement of proof beyond a reasonable doubt is a constitutional requirement of due process."  Id. at 1007, 407 S.E.2d at 912.  The error is harmless only if we can say beyond a reasonable doubt that the error did not affect the verdict.

The excluded evidence was offered to show Peggins' motive to fabricate his testimony and to highlight prior inconsistent statements.  While there was testimony that Peggins was "a

-

compulsive liar" and that he had "a very short temper," we cannot say that the excluded evidence of a specific financial motive to lie in this case would have the same weight as the more general statement that Peggins lied on other occasions. Moreover, Shelton's proffered testimony corroborated appellant's version of the events surrounding the fight, showing Peggins as the aggressor and the shooting to be accidental. Specifically, Shelton's testimony corroborated appellant's statement that Peggins struck him and knocked him to the ground when the two went outside and that Peggins "was stomping on" appellant immediately before the shot was fired. Without usurping the jury's fact finding function, we cannot say that this evidence would not have changed the verdict in the instant case. Accordingly, we reverse and remand the case to the trial court for a new trial if the Commonwealth be so advised.

Reversed and remanded.