UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia


WALTER JAMES GRAVES

MEMORANDUM OPINION[*] BY
CHIEF JUDGE GLEN A. HUFF
MAY 23, 2017

v.      Record No. 1341-16-2

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SUSSEX COUNTY
Nathan C. Lee, Judge

> Eric J. Livingston (Livingston and Walsh, PLLC, on brief), for
> appellant.
>
> Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
> Herring, Attorney General, on brief), for appellee.


Walter James Graves ("appellant") appeals his conviction of breaking and entering, with

the intent to commit a felony, in violation of Code § 18.2-91.[1]  Following a bench trial in the

Circuit Court of Sussex County ("trial court"), appellant was sentenced to twenty years'

incarceration, with sixteen years suspended.  On appeal, appellant contends that the trial court

erred by "convicting [appellant] of breaking and entering on May 5, [2015] because at the time

of the alleged offense he had never voluntarily or involuntarily surrendered his residency and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also found guilty of felony violation of a protective order, misdemeanor violating a protective order, destruction of property, and two counts of misdemeanor trespass, in violation of Code §§ 16.1-253.2, 18.2-60.4, 18.2-137, and 18.2-119, respectively.  These convictions are not the subject of this appeal.

habitation at the address and was only prohibited from being at the address by the terms of a Protective Order."[2,3] For the following reasons, this Court affirms appellant's conviction.

## I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

In 2014, while appellant was incarcerated for offenses unrelated to this appeal, appellant threatened his wife, Jean Harvell Graves ("wife"), saying "[he] wished [he] had did what [he] said that [he] was going to do to [her] in the first place." Appellant also wrote several letters to wife, blaming her for his incarceration, calling her derogatory names, and threatening to "get her" and to "burn[] . . . [her] house down with [her] in it."

Due to appellant's threats, wife petitioned for a protective order against appellant. The protective order, entered December 3, 2014, provided that until December 3, 2016, appellant was not to have any contact with wife and that "[wife] is granted possession of the residence occupied by the parties to the exclusion of [appellant]. . . . [Appellant] shall immediately leave

---

[2] Appellant further asserts in his assignment of error that: "Code § 18.2-119 which addresses misdemeanor trespass . . . would have been the proper charge for the May 5, [2015] incident." This argument is without merit. As this Court has already articulated, "[w]here the circumstances surrounding an offense permit prosecution under either of two statutes, the selection of the statute under which to proceed is a matter of prosecutorial election. We cannot gainsay the exercise of that right." Smith v. Commonwealth, 17 Va. App. 37, 41, 434 S.E.2d 914, 916 (1993) (citing Mason v. Commonwealth, 217 Va. 321, 323-24, 228 S.E.2d 683, 684 (1976)).

[3] Appellant does not challenge the sufficiency of the evidence to prove his felonious intent; accordingly, this Court does not address it.

and stay away from the residence; however, no such grant of possession shall affect title to any real or personal property." Appellant was served with the protective order on December 3, 2014.

Despite this protective order, on May 2, 2015, around 10:30 a.m. appellant was at wife's residence, "kicking at the back door." Wife turned on her home alarm system and attempted to use her landline telephone but found it inoperative. She then used her cell phone to call the sheriff's office. After appellant had kicked the door for five or six minutes, wife heard a noise outside of her bedroom window. Looking out of her bedroom window, wife saw appellant standing near her electrical meter with his arms raised. Soon after, the electricity to the house was disabled.

Law enforcement arrived around eleven that morning. While wife and the officer walked the perimeter of the house, they noted that the telephone wires were severed, the latch on the back door was broken and the door left slightly ajar, and the electrical meter box by wife's bedroom was gone. The officer did not find appellant on the premises during his search.

On May 5, 2015, wife arrived home around 2:00 p.m. to meet a contractor. After disarming the alarm, wife felt that something was not right and began to look through each room in her house. When she looked in the master bedroom, she noticed the window screen was slashed and the storm window had been removed. She also observed that appellant's clothes, which she had removed from the closet, had been rehung. As wife passed the foot of her bed, she saw appellant's arm protruding from under the bed and when she looked under the bed, she found appellant lying face up with his eyes open.

After seeing appellant, wife left her bedroom and told the contractor that appellant was in the house. Wife, the contractor, and his assistant promptly left the house to stand in the driveway. About thirty seconds later, appellant came out and stated that he was only in the house to retrieve his identification. Appellant re-entered the house and about two minutes later,

walked out of the house toward wife and the contractor. Appellant shook the contractor's hand, then picked up a cinder block. The contractor told appellant, "[y]ou're not going to hurt her," and appellant responded, "No, I'm not going to hurt her." He then threw the cinder block through wife's car windshield and left.

Appellant was later charged with breaking and entering with the intent to commit a felony. During his trial, appellant moved to strike the evidence on the ground that a person cannot burglarize his own habitation. The trial court denied the motion and found that although appellant had been living with wife in the house since they were married in 2008, wife had inherited the house from her parents prior to their marriage and appellant did not have any ownership interest in the property. At the close of the evidence, appellant again argued the charge should be dismissed because the house was his residence. The trial court denied appellant's motion and found him guilty. This appeal followed.

## II. STANDARD OF REVIEW

"What the elements of the offense are is a question of law that we review *de novo*. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868 (2013). Viewing the evidence and reasonable inferences drawn therefrom in the light most favorable to the prevailing party,

> the question is whether any rational trier of fact could have found
> the essential elements of the crime beyond a reasonable doubt. . . .
> [I]f there is evidence to support the conviction, the reviewing court
> is not permitted to substitute its judgment, even if its view of the
> evidence might differ from the conclusions reached by the finder
> of fact at the trial.

Id. at 224, 738 S.E.2d at 868 (quoting Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011)).

- 4 -

III.  ANALYSIS

As used in Code §§ 18.2-90 and 18.2-91,[4] "'the term "dwelling house" . . . means a place which human beings regularly use for sleeping[,]'and the crime was, 'at common law, primarily an offense against the security of [another's] habitation, and that is still the general conception of it.'"  Turner v. Commonwealth, 33 Va. App. 88, 92, 531 S.E.2d 619, 621 (2000) (alterations in original) (quoting Rash v. Commonwealth, 9 Va. App. 22, 25, 383 S.E.2d 749, 751 (1989)).  "In enacting Code §§ 18.2-90 and -91, the legislature . . . [expanded] the common law to safeguard both conventional dwelling houses and other specified structures, 'used as a dwelling or place of human habitation,' from *unlawful invasion*."  Id. at 93, 531 S.E.2d at 621 (emphasis added).  In this way, statutory burglary continues to preserve "the ancient notion that a man's home [is] his castle and that he [has] the right to feel safe therein."  Rash, 9 Va. App. at 25, 383 S.E.2d at 751.

In Turner, this Court upheld the defendant's burglary conviction because he was under a court order to have no contact with his wife, "a restriction that clearly precluded his habitation of the trailer" where wife resided, despite his joint ownership of it.  33 Va. App. at 94-95, 531 S.E.2d at 622.  In so ruling, this Court rejected the defendant's argument that one could not be convicted of breaking and entering his own property.  Id. at 93, 531 S.E.2d at 621.  This Court reasoned that to accept the defendant's argument would "discount[] the sanctity of habitation, upending the gravamen of the offense" of burglary, in violation of Code §§ 18.2-90 and 18.2-91.  Id.  Instead, this Court concluded that under the court order, "the defendant's proprietary interest was relegated to wife's superior possessory interest and right to exclusive habitation."  Id. at 94-95, 531 S.E.2d at 622.  Therefore, the "defendant's acts in breaking and entering the home,

_____

[4] Code § 18.2-90 provides, in pertinent part, that a person will be guilty of statutory burglary "[i]f [he] in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson."  Code § 18.2-91 governs if the perpetrator's intent was, instead, to "commit larceny, [assault and battery,] or any felony other than murder, rape, robbery or arson . . . ."

accompanied by the requisite unlawful intent, *offended wife's right of habitation* and constituted burglary in violation of Code §§ 18.2-90 and -91, *notwithstanding his joint ownership of the property*." Id. at 95, 531 S.E.2d at 622 (emphasis added).

Similarly, in this case, as a result of the protective order, wife's house was no longer appellant's residence and any interest appellant had in her home "was relegated to wife's superior possessory interest and right to exclusive habitation." See id. Thus, the evidence was sufficient to find that appellant's entry into wife's house with the intent to commit a felony "offended wife's right of habitation" in violation of Code § 18.2-91. See id. The fact that appellant's clothing and identification were still in the house does not alter this conclusion. Appellant could have simply made arrangements to retrieve his personal effects rather than break into wife's home (and, thereby, violate the protective order the court had put in place). The ruling of the trial court is affirmed.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms appellant's conviction.

Affirmed.