COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Humphreys, O'Brien and Chaney
Argued at Lexington, Virginia


TIMOTHY WAYNE JONES

                                            MEMORANDUM OPINION[*] BY
v.       Record No. 0592-22-3             JUDGE VERNIDA R. CHANEY
                                                JULY 5, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

John S. Koehler (Justin A. Steele; The Law Office of James Steele,
PLLC, on brief), for appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the circuit court convicted Timothy Wayne Jones of statutory

burglary and maliciously shooting a firearm within an occupied building, in violation of Code

§§ 18.2-91 and 18.2-279, respectively.[1]  On appeal, Jones challenges the sufficiency of the evidence

to sustain these convictions.  For the following reasons, this Court affirms the circuit court's

judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party" in the circuit court.  *McGowan v.*

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jones does not challenge his related misdemeanor convictions for brandishing a firearm
and property damage.

*Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

Jones and the victim, P.H., dated from November 2020 until July 25, 2021, when Jones broke into P.H.'s house, fired a gun at her bedroom wall, and held the gun to P.H.'s head.[2] When Jones removed the gun from P.H.'s head, P.H. ran to the bathroom and locked the door. After waiting there for a while, P.H. determined that Jones had left her house. P.H. testified that she was not injured and she did not require any medical treatment.

Before Jones broke into P.H.'s house on July 25, he was inside her house behaving belligerently after they both had been drinking alcohol. When Jones went outside, P.H. locked the door so he would leave. Realizing that P.H. had locked him out, Jones "flipped out in a rage" and "punched through the door" to re-enter.

Although Jones and P.H. resided separately, they sometimes stayed overnight at each other's homes and Jones kept some of his belongings at P.H.'s house. But Jones did not pay rent or utilities for P.H.'s house. Before July 25, Jones had stayed overnight at P.H.'s house for six consecutive nights. Many months after the violent incident on July 25, Jones returned to P.H.'s house and recovered his motorcycle and some clothes he left there.

At trial, after the Commonwealth rested its case, Jones moved to strike the evidence on the statutory burglary charge. Jones contended that he was an invitee at P.H.'s home and, as such, had a right to be there. Jones also argued that after P.H. locked him out, he had no intent to do some other unlawful act at the time he entered the house. In denying Jones's motion to strike, the circuit court found that P.H. locked the door after Jones went outside because "[s]he did not

---

[2] For the sake of the victim's privacy, we refer to her by her initials throughout this opinion.

want him back in." The circuit court also found that Jones "forced his way in, went straight to the bedroom where [P.H.] was, and immediately picked up a firearm."

After the circuit court denied the motion to strike, Jones testified in his own defense. Jones claimed that he "was in the process of moving in with [P.H.]" on the alleged offense date and he had been living with P.H. and staying overnight at her house for the prior two months. Although Jones acknowledged that he was renting another residence and paid no rent or utility bills for P.H.'s house, Jones testified that all his clothes and almost all his other belongings were at P.H.'s house. According to Jones's testimony, before he and P.H. argued on July 25, they went out to dinner, bought some vodka, and then "went back home to [P.H.'s] house." Jones alleged that after drinking wine and a few shots of vodka, P.H. screamed and cursed at him about "a one-night stand" involving Jones and another person. Jones further alleged that around 12:30 a.m. on July 25, P.H. angrily slapped him and then continued screaming and cursing at him. Jones claimed that he unsuccessfully tried to calm P.H. down. As P.H. acknowledged in her testimony, she left the house that night and went on a brief drive. Jones testified that after P.H. returned home, he went outside to smoke a cigarette and P.H. locked him out. Jones admitted that he then "flipped out in a rage" because everything he owned—including his keys, phone, wallet, sleeping machine, clothes, and gun, among other things—was locked inside P.H.'s house. Jones testified that to retrieve his property before leaving, he "punched through the door . . . to get back in to leave." Jones contended that "[w]hen [he] picked the gun up, the gun went off and shot through the bottom of the wall." Jones stated that just before he left the house, P.H. followed him while screaming at him, "if you leave this time[,] you'll, you'll never be, be back."

After Jones testified, he called P.H. as a defense witness. P.H. denied that Jones had been living at her house, and she denied slapping Jones that night.

At the conclusion of all the evidence, Jones incorporated his renewed motion to strike in his closing argument. Jones again moved to strike the evidence on the burglary charge on the grounds that P.H. had expressly invited him to stay at her house overnight, giving Jones a "possessory right" to be there. Additionally, Jones contended that the evidence failed to show that he had the requisite intent for statutory burglary: the intent to commit some other unlawful act at the time he re-entered P.H.'s house. Jones contended that his only intent in re-entering the house after P.H. locked him out was "to get his property and leave."

Jones also argued that he did not maliciously discharge a firearm within an occupied building, but that he merely handled the gun recklessly after drinking, with no intention to fire the gun.[3] Additionally, Jones challenged the credibility of P.H.'s testimony denying that Jones resided with her and denying she had slapped Jones in anger before he went outside to smoke a cigarette.

After closing arguments, the circuit court noted Jones's admission that he "flipped out and went into a rage, and punched through" the door after P.H. locked him out. The circuit court found that Jones did not reside at P.H.'s house, but he was merely P.H.'s invitee until she rescinded the invitation when she locked him out. The circuit court expressly rejected Jones's testimony that P.H. "was chasing [him] down the hallway saying 'if you leave you're not coming back.'" The circuit court also found that after Jones punched in the door and broke into P.H.'s house, he did not go to get his wallet or keys, but went to the bedroom, grabbed and shot the gun, and then held the loaded gun to P.H.'s head. The circuit court concluded that Jones broke in with the intent to commit an assault and battery against P.H. Based on these findings, the circuit court denied Jones's renewed motion to strike and found him guilty as charged.

---

[3] In Jones's closing argument, he conceded "that there is evidence sufficient to convict him of the property damage."

The circuit court sentenced Jones to incarceration for 6 years with all but 11 months suspended. This appeal followed.

ANALYSIS

I. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

This Court's deference to the circuit court's factual findings stems, in part, from the circuit court's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021). Accordingly, settled principles dictate that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact-finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the

witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

"To the extent the analysis of the sufficiency of the evidence requires this Court to interpret the elements of the offense, such review is conducted *de novo*." *Pooler v. Commonwealth*, 71 Va. App. 214, 220 (2019).

## II.  *Statutory Burglary*

Jones contends that the circuit court erred in convicting him of statutory burglary because he "regularly resided [there] with a right to enter and leave at will." Op. Br. 8. Upon reviewing the evidence in the light most favorable to the Commonwealth, this Court holds that the evidence supports the statutory burglary conviction.

Burglary is "primarily an offense against the security of [another's] habitation." *Pooler*, 71 Va. App. at 220 (quoting *Turner v. Commonwealth*, 33 Va. App. 88, 92 (2000) (alteration in original)). "Accordingly, to prove a burglary charge, the Commonwealth must [prove] that the breaking and entering occurred not just at a 'dwelling house,' but that it was the dwelling house 'of another.'" *Id.* at 220-21 (quoting *Turner*, 33 Va. App. at 92).

As a matter of law, a person cannot "unlawfully break and enter a home" which he "has the right to occupy." *Id.* at 221 (quoting *Justus v. Commonwealth*, 274 Va. 143, 155 (2007)). "[A] person does not 'break' into a dwelling when they have permission to enter the dwelling and act in accordance with that permission." *Id.* at 223. But even "a person authorized to enter a dwelling" may be guilty of burglary if he exceeds the scope of his permission to do so, including by entering

to commit a criminal act. *Jones v. Commonwealth*, 279 Va. 295, 300 (2010). In other words, an invitee's "permission or authorization to enter may be negated by [his improper] intent" when entering. *Id.*

Jones argues that P.H.'s act of locking the door "is not sufficient to defeat Jones'[s] status as a resident of the property with a right to enter." Op. Br. 9. However, the evidence supports the circuit court's findings that Jones neither resided at P.H.'s house nor had permission to enter after P.H. locked him out. P.H. testified unequivocally that Jones did not live with her and she locked the door "so he would leave." Additionally, Jones testified that he maintained a separate residence and did not contribute to P.H.'s rent or other household expenses. Jones also conceded during his motion to strike that he was P.H.'s "invitee" and subject to revocation of his right to remain at her home. Thus, a rational fact-finder could find that Jones broke into and entered the dwelling house of another.[4]

The evidence also supports the circuit court's finding that P.H. had rescinded Jones's invitation to enter her home when she locked him out. The circuit court expressly credited P.H.'s testimony that she locked Jones out so he would leave, and expressly rejected Jones's conflicting testimony that P.H. told him "if you leave you're not coming back." This Court considers the evidence in the light most favorable to the Commonwealth and will not disturb the circuit court's credibility determinations. *See Ragsdale*, 38 Va. App. at 429.

Finally, even if Jones had permission to enter P.H.'s house after she locked him out, Jones could not lawfully re-enter with the intent to assault P.H. *See Jones*, 279 Va. at 300 ("any

---

[4] Jones contends on appeal that P.H. "never stated that Jones could not return to the home, and no evidence suggests that she was aware that Jones did not have his key . . . ." Op. Br. 9. But the evidence at trial did not establish that Jones had a key to P.H.'s house. Jones testified at his *sentencing* hearing—but not at trial—that he had a key to P.H.'s house. Thus, the circuit court had no opportunity to consider that evidence in deciding Jones's guilt or innocence. But even if true, that circumstance would not justify breaking into P.H.'s home after she had clearly revoked his invitation to remain. *See Pooler*, 71 Va. App. at 224.

permission to enter the apartment given to Jones does not preclude a conviction for statutory burglary because that permission would have been negated by his intent to commit assault and battery"). The undisputed evidence established that when P.H. locked Jones out of the house, Jones "flipped out in rage" and punched a hole in the door to gain entry. Then Jones immediately went to P.H.'s bedroom and retrieved his gun. The evidence supports the circuit court's express findings that instead of collecting his keys, wallet, or other belongings, Jones grabbed and fired his gun and then held the gun to P.H.'s head. Thus, the evidence supports the circuit court's finding that Jones broke into the house with the intent to commit assault and battery. Therefore, the circuit court did not err in convicting Jones of statutory burglary in violation of Code § 18.2-91.

### III. *Maliciously Shooting a Firearm in an Occupied Building*

Jones contends that the circuit court erred in finding that he fired the gun maliciously.[5] Op. Br. 10. We disagree. Taking the evidence in the light most favorable to the Commonwealth, this Court holds that the evidence supports the circuit court's finding that Jones maliciously discharged the firearm.

Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice may exist alongside and arise from 'anger, hatred[,] and revenge' as well as any other 'unlawful and [unjustified] motive.'" *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (alterations in original) (quoting *Watson-Scott*,

---

[5] Because Jones did not assign error to the circuit court's finding that he discharged the firearm in a manner so as to endanger P.H.'s life or the life of any person, this Court does not address Jones's contention on appeal that the circuit court erred in making this finding. *See Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant." (citations omitted)). Additionally, this issue was not preserved for appellate review because the issue was not raised in the circuit court. *See Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) ("[T]his Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" (second alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998))).

298 Va. at 256). Like any intent, malice may be proved by circumstantial evidence such as a person's conduct and statements, including those occurring "after the events that constitute the charged crime." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (citing *Canipe v. Commonwealth*, 25 Va. App. 629, 645 (1997)). Whether an accused acted with malice "is a question of fact to be determined by" the fact-finder. *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)).

The record supports the circuit court's finding that Jones maliciously fired the gun. The undisputed evidence established that Jones angrily broke into P.H.'s home and immediately retrieved his gun and fired it in P.H.'s presence. As Jones admits, he then threatened P.H. by placing the loaded gun to her head. Jones concedes on appeal that the circuit court could have reasonably rejected his testimony that the firearm discharged accidentally. Op. Br. 11. Jones argues, however, that since he did not aim the gun at P.H., but fired downward in the opposite direction of P.H., the evidence failed to show that he discharged the gun with malice toward P.H. Op. Br. 11. Considering the totality of the evidence in the light most favorable to the Commonwealth, this Court concludes that a rational fact-finder could find that Jones deliberately and maliciously fired the gun to intimidate P.H. before he held the gun to her head. Therefore, a rational fact-finder could have reasonably rejected Jones's contention that the evidence showed only non-malicious negligent or reckless discharge of the firearm.

## CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*